No. 2-09-1248      Filed:  9-15-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| In re MARRIAGE OF<br>BONNIE DAEBEL, | ) <br> ) <br> ) | Appeal from the Circuit Court<br>of McHenry County |
| Petitioner and Counterrespondent-<br>Appellee, | ) <br> ) <br> ) | |
| and | ) | No. 07--DV--1063 |
| | ) | |
| WILLIAM DAEBEL, | ) <br> ) | Honorable |
| Respondent and Counterpetitioner-<br>Appellant. | ) <br> ) | Robert A. Wilbrandt, Jr.,<br>Judge, Presiding. |

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Respondent, William Daebel, appeals the trial court's order dissolving the marriage between him and petitioner, Bonnie Daebel.  On appeal, respondent argues that the trial court erred in imposing too lenient a sanction for petitioner's discovery violations, declining to find that petitioner dissipated marital assets, refusing to allow an evidence deposition into evidence, and declining to award him maintenance.  For the reasons that follow, we vacate and remand for further proceedings.

In her November 2007 petition for dissolution of marriage, petitioner alleged that the parties had irreconcilable differences; respondent admitted the allegation in his response and repeated it in his counterpetition.  During pretrial discovery, respondent filed a motion asking the trial court to order petitioner to settle a delinquency in the mortgage on the marital residence; respondent alleged that petitioner had missed several payments and that the residence was poised for a foreclosure sale.

The trial court entered an order directing the parties to share documentation regarding the foreclosure and to "sign papers to stop the foreclosure." A later order required that petitioner "use her best efforts to renegotiate" the mortgage on the residence.

In March 2009, respondent filed a motion to compel petitioner to appear at an evidence deposition; the motion stated that petitioner declined to appear at a previously scheduled deposition, which had already been delayed several times. (Exhibits attached to the motion indicated that petitioner told her attorney, who withdrew as counsel shortly thereafter, that she was preoccupied by her mother's serious medical condition.) The trial court continued the hearing on the motion for approximately one month, at which time it ordered petitioner to appear at a deposition on April 15. On April 27, after petitioner again failed to appear for her deposition, respondent filed a motion for a discovery sanction in the form of (1) a default judgment, (2) an order barring her from testifying, or (3) an order barring her from "presenting any defense to dissipation of marital assets claims for failing to pay the mortgage, failing to refinance the marital home and for dissipating cash from bank accounts." In May, after a hearing at which petitioner did not appear, the trial court continued its ruling on respondent's motion to June 11. In the meantime, respondent filed a request to admit facts, which included the following paragraphs:

"5. *** Petitioner admitted she had a stock portfolio worth approximately $65,000 in 2006. Petitioner has failed to disclose where that stock portfolio was held or what has happened to those funds.

* * *

8. *** [Petitioner] told [respondent] that she would not appear at her deposition scheduled for April 15, 2009 because she did not want to subject herself to questioning.

9. In Summer of 2008, Petitioner *** told a real estate appraiser present at the marital home the skylights leaked in an effort to lower the appraisal amount. The skylights did not leak.

***

11. Petitioner *** stopped making mortgage payments in November of 2007 and attempted to drive down the appraisal value of the home in order to lower the equity value of the home.

* * *

15. According to [bank] records, [petitioner] made large cash withdrawals beginning September, 2008, which dissipated marital assets[] were used for a purpose unrelated to the marriage. These included cash withdrawals *** for $2844.88 and *** $5000.

16. According to [records from another bank], [petitioner] made many large cash withdrawals beginning March 2007, which dissipated marital assets[] were used for a purpose unrelated to the marriage and which caused further dissipation because of fees charged for insufficient funds. [A list of withdrawals, and their corresponding dates, followed.]

* * *

19. *** As of March 23, 2008 [sic], [petitioner] had made no effort whatsoever to refinance the [mortgage on the marital home]. ***

20. Petitioner's actions in not abiding by the court's orders to refinance or renegotiate the mortgage loan with respect to the marital home has caused the dissipation of marital assets in the form of lost equity which as of March 23, 2008 [sic] was $46,069.02."

Petitioner filed no timely response to this request to admit.

On the June 11 hearing date, petitioner did not appear, and the trial court continued its ruling on respondent's motion for sanctions until June 17, the date it set for trial. On June 17, petitioner appeared pro se, and the court held a trial on the dissolution petitions. At the start of the trial, counsel for respondent asked the court to rule on respondent's motion for sanctions for petitioner's refusal to appear for depositions. The following colloquy ensued:

"THE COURT: Court will take that under advisement while we do the trial.

[RESPONDENT'S COUNSEL]: All right.

THE COURT: And you can present your motion for sanctions at that time, which is now.

[RESPONDENT'S COUNSEL]: Well, I would then ask the Court to grant the relief we asked for.

THE COURT: Well, first of all, put it on the record what happened, and then we'll go on the motion for sanctions right now before we start the trial.

[RESPONDENT'S COUNSEL]: [Recites the history underlying the motion for sanctions].

THE COURT: Okay. The Court will take that under advisement.

Now, are we set for your--a trial?"

Thus, despite the fact that the motion for sanctions sought to bar petitioner from presenting certain evidence at trial, and despite the trial court's statement that it would rule on the motion once respondent's counsel explained the motion, the trial court inexplicably continued its ruling on the motion until after the trial.

During an opening statement that reads more like a cross-examination by the trial court, respondent's counsel raised the issue of dissipation:

"Petitioner began making large cash withdrawals from bank accounts ***. Those were from bank accounts--

THE COURT: Did you give her notice of dissipation?

[RESPONDENT'S COUNSEL]: Yes, your Honor.

THE COURT: Do you have a copy of it?

[RESPONDENT'S COUNSEL]: We will, we have it in here--in the request to admit.

THE COURT: All right. But did you give her any other notice of dissipation?

[RESPONDENT'S COUNSEL]: About the large cash withdrawals?

THE COURT: About dissipation--a request for dissipation?

[RESPONDENT'S COUNSEL]: In our motion for sale of the home there was a dissipation finding.

THE COURT: Did you give her any notice of dissipation?

[RESPONDENT'S COUNSEL]: Something termed notice of dissipation?

THE COURT: Correct.

[RESPONDENT'S COUNSEL]: We had scheduled her for deposition, and we had intended to ask her for--

THE COURT: All right. So your answer is no.

Thank you. Go ahead.

[RESPONDENT'S COUNSEL]: But it is in the request to admit, and that is evidence in this matter.

THE COURT: Okay. You gave her nothing other than the usual discovery requests. Go ahead."

During his testimony, which the trial court interrupted frequently with its own lines of questioning, respondent testified that he and petitioner had been separated for over five years, even though they had lived in the same house for much of that time. He said that he had been unemployed since May 2008 but received monthly unemployment insurance income of approximately $2,000. He testified that he would resume work when a job became available and that he was actively seeking employment, and he anticipated that his income would have approached $6,000 per month if he had been employed full time since the start of his unemployment. He also stated that the hourly wage to which he was entitled when he did work had just been raised from approximately $35 or $36 per hour to approximately $54 per hour, including insurance, pension, and the like. Respondent stated that he sought maintenance from petitioner for his living expenses, but he and his counsel indicated that he did not seek reimbursement for his insurance expenses, because he still received insurance from his union benefits.

Respondent's counsel attempted to question respondent regarding petitioner's alleged dissipation of bank account funds, but the trial court interjected to say that it was "going to object to that question, and [respondent was] not going to answer it." The trial court went on to reject counsel's argument that petitioner had admitted the dissipation, or at least that the withdrawn funds were used for some purpose unrelated to the marriage, because the trial court concluded that those propositions were statements of law and thus not proper admissions.

At the conclusion of respondent's testimony, respondent's counsel also attempted to tender into evidence a deposition transcript from a doctor describing the limitations respondent's multiple

sclerosis placed on him. The trial court responded that it was "not going to accept the hearsay document of *** the doctor at this time." Counsel responded by noting that it was "an evidence deposition transcript," and the court replied, "I understand that." As counsel moved on to discuss potential exhibits regarding the bank withdrawals, the court began questioning respondent regarding his ability to work:

"THE COURT: Well, let me just ask [respondent] this question: [Respondent], are you physically able to work now?

[RESPONDENT]: I don't know until I get back.

THE COURT: Okay.

[RESPONDENT]: No. No, I've lost it, you know. Every time I sit home this long, I do not know what to expect. I am entitled--no, no, I've lost it.

THE COURT: Have you worked at all since last March?

[RESPONDENT]: No.

THE COURT: Have you laid any tile?

[RESPONDENT]: I got laid off in October.

Since? No."

The trial court and counsel then clarified when respondent had last worked, and counsel questioned respondent regarding the treatment for and effects of his multiple sclerosis. In that testimony, respondent said that he intended to go back to work but was "almost willing to start giving up" and could no longer carry a box of tile.

In her testimony in respondent's case-in-chief, petitioner testified that she made approximately $1,100 per week, but she agreed that her financial affidavit listed her monthly income

as $5,226. When asked about the cash withdrawals referenced in respondent's request to admit, petitioner explained that a friend had asked her to cash his paychecks, which she accomplished by depositing the paychecks in her account and then making withdrawals. Thus, she said, the withdrawn money was not hers, and she gave all of the withdrawn funds to her friend. Petitioner testified that she could not recall precisely when she began depositing and withdrawing funds on her friend's behalf. She said that all of her friend's checks were made out to cash and that her withdrawals did not correspond exactly to the deposits. She also agreed that she did not disclose this explanation during discovery.

Under questioning from the trial court, petitioner agreed that she and respondent had irreconcilable differences and had been separated for over two years. She also said that she had a stock portfolio worth approximately $3,500 or $4,000, but she denied the existence of the $65,000 stock portfolio referenced in respondent's request to admit.

After petitioner's testimony, respondent's attorney again sought to enter into evidence an evidence deposition from a doctor describing respondent's multiple sclerosis. The trial court denied the request thusly:

"[RESPONDENT'S COUNSEL]: Dr. Katsmakis is the treating physician for the MS. I understand if you don't want to hear the evidence. But I do have the transcript.

THE COURT: Well, is he here to testify?

[RESPONDENT'S COUNSEL]: Through his evidence deposition, yes.

THE COURT: I haven't had a foundation for an evidence deposition, so your request would be denied.

[RESPONDENT'S COUNSEL]: Foundation.

No. 2--09--1248

THE COURT: Any other witnesses?

[RESPONDENT'S COUNSEL]: Well, I can lay that foundation with [respondent].

THE COURT: Any other witnesses?"

At that point, the trial moved to petitioner's case-in-chief, and the trial court asked what witnesses petitioner intended to call:

"THE COURT: You have to tell me, and I have to rule on [respondent's] request to ban your witnesses because you never showed up for the deposition.

[PETITIONER]: Uh-huh.

THE COURT: And you never gave [respondent's counsel] any notice of who those witnesses were.

* * *

[PETITIONER]: I'm thinking of calling my father ***, because he was the one who was going to buy the house last summer.

THE COURT: You never gave any notice of that to [respondent], is that correct?

[PETITIONER]: No. I didn't know I was supposed to (Unintelligible).

THE COURT: [Respondent's counsel], do you object to this gentleman testifying?

[RESPONDENT'S COUNSEL]: Yes.

THE COURT: Your objection is sustained. He's banned from testifying as a discovery sanction."

In similar fashion, on the ground that the witnesses were not disclosed to the other side, the trial court sustained objections to petitioner's calling her son and her sister to testify; it did, however,

allow petitioner to testify on her own behalf. She testified, among other things, that the skylight in the marital home actually did leak.

After closing argument, the trial court reviewed the request to admit. When it came to the paragraphs referencing petitioner's bank fund withdrawals, the trial court ruled as follows:

"According to these records [petitioner] made large cash withdrawals beginning September 2008. That's admitted ***.

When the statement says dissipating marital assets, that's a legal conclusion which this Court is unwilling to make at this time indicating that [petitioner's] explanation of the cases regarding the withdrawals were credible ***.

* * *

The cash withdrawals stated were testified in evidence, and she indicated that *** they were apparently [her friend's] checks that she put into the account and cashed. The Court finds that's credible."

The trial court thus accepted all of the admissions, save for those indicating that the withdrawals constituted dissipation of marital assets. It did not otherwise address respondent's dissipation claims. The court stated that it was "unsure of [respondent's] medical condition and whether he [could] return to work," and it thus "reserve[d]" the issue of maintenance "for a reviewable period of at least five years." However, the court did order that petitioner, "[a]s maintenance," reimburse respondent for the insurance costs he sustained on behalf of the parties' children. The court allowed petitioner to remain in the marital home, but it appointed respondent to make efforts to sell the home and indicated that petitioner would bear the cost of any losses due to the home's being in foreclosure.

At the end of the court's ruling, respondent's attorney clarified two aspects of the court's ruling, including its ruling on the parties' retirement holdings, before asking about the $65,000 stock portfolio:

"[RESPONDENT'S COUNSEL]: But she disposed of a huge *** amount of those assets (Unintelligible).

THE COURT: You can always make a motion to reconsider.

That's the Court's ruling, and I want a judgment on it.

[RESPONDENT'S COUNSEL]: Request--Request to admit she had this stock portfolio.

THE COURT: The time for argument is over. I've given my decision.

If there's $65,000 in stocks, then by golly you get half of it. If there's not, you get half of what's there."

The trial court thus entered no finding as to whether the $65,000 portfolio actually existed.

After the trial court's ruling, respondent filed a motion for a ruling on his pretrial motion for discovery sanctions. The motion requested a ruling on the sanctions motion as well as a ruling on the dissipation issue, which the trial court did not address in its posttrial findings other than to say that it did not accept the dissipation claims in the request to admit. At the start of the hearing on respondent's motion, the following exchange took place between respondent's counsel and the trial court:

"THE COURT: I thought I ruled on claims of dissipation already.

[RESPONDENT'S COUNSEL]: Well, Judge *** you made no factual findings. And when I found myself trying to go over what your rulings were, *** I found myself having to

guess as to how you ruled on those claims for dissipation. I thought it might be best for the record to--

THE COURT: Well, then you can file a motion for reconsideration. *** I think I've already ruled on it. You can ask me to reconsider that ruling.

[RESPONDENT'S COUNSEL]: I'm not asking you at this time to reconsider. I'm asking you to make findings.

***

And I would just ask the judge to make a *** clear record *** on those dissipation claims.

THE COURT: I'm allow [sic] you to file a motion to reconsider.

[RESPONDENT'S ATTORNEY]:

* * *

*** [Y]our judgment didn't address the dissipation claims. I can assume then that you denied those claims. But I don't know if *** the basis for your ruling was *** notice or conclusory statements [in the request to admit] or both.

And to argue *** it *** to an appellate court, what I think the judge said *** is going back and forth and trying to guess *** on what basis you denied the dissipation claims.

*** I think a [reviewing] court would appreciate you making--

THE COURT: Isn't that up to the appellate court?

[RESPONDENT'S ATTORNEY]: --findings of *** fact *** as to each of the dissipation claims so that we know *** on what basis those claims were denied.

THE COURT: You can file your motion to reconsider.

-12-

[RESPONDENT'S ATTORNEY]: So you won't offer any explanation as to--did you deny the claims for dissipation since you didn't address them in the judgment?

THE COURT: I'm going to stand on the actual judgment. If you want some type of a motion to reconsider the actual judgment, I'll do that. But--

[RESPONDENT'S ATTORNEY]: Well, what am I reconsidering though?"

At this point, the trial court finally relented and, for the first time, articulated its ruling on the dissipation claims:

"THE COURT: --I think my judgment was clear enough that I didn't find that there was any dissipation based on the fact that there wasn't *** a sufficient notice of dissipation given to the pro se person.

And I think the pro se person gave an explanation that I considered to be viable in regards to what she did with the money that you claim she dissipated."

The trial court then told respondent's counsel that she could ask for reconsideration on the point, and counsel instead sought to clarify the trial court's order:

"So just so I understand--

THE COURT: I'm not going to say--

[RESPONDENT'S ATTORNEY]: --the request--

THE COURT: --anything else about that, [counsel]. You can understand what you want to understand. I made a ruling on that already.

[RESPONDENT'S ATTORNEY]: All right. And from what I'm hearing, I'm hearing that the request to admit would--

THE COURT: You can hear whatever you want to hear, but I'm not going to--

[RESPONDENT'S ATTORNEY]: Well--well, can I make the record, Judge?

THE COURT: --confirm your understanding.

[RESPONDENT'S COUNSEL]: That's fine.

THE COURT: You can make a record.

[RESPONDENT'S COUNSEL]: From what I'm hearing, the request to admit did not provide sufficient notice of the claims for dissipation. And from what I'm hearing, *** your Honor considered the dissipation claims *** by taking into account [petitioner's] testimony at trial, even though what was contained in the request to admit were judicial admissions. That's what I'm hearing the court to say.

THE COURT: I'm glad you heard the court say that. I'm not saying that's what I said; but if that's your understanding, that's okay.

[RESPONDENT'S ATTORNEY]: Well, I believe that's what you just stated. So if there's any misunderstanding there, I *** would just wish that you would--

THE COURT: I said that you made requests to admit. Some of your requests to admit were conclusory. Therefore, they were improper requests to admit.

Other things that you put in there, there wasn't any notice of dissipation given to the pro se litigant as far as I could see.

And the third thing was that the pro se litigant explained how she spent this money to my satisfaction."

Respondent's counsel then moved on to ask the court to rule on the discovery sanctions motion, and counsel sought an order striking either petitioner's testimony or her defense:

"When a litigant willfully fails to appear at a deposition, the only sanction that can appropriately address willful failure to appear is the relief we requested, which is debarring her--

THE COURT: Does the statute say that?

[RESPONDENT'S ATTORNEY]: Your Honor, *** it's common sense that if you willfully fail to appear at a deposition, the only appropriate sanction *** is to prevent you from testifying. There's nothing else that would prevent prejudice, as argued in our motion ***.

* * *

[RESPONDENT'S ATTORNEY]: *** There is no other redress which would prevent prejudice in this case.

If a litigant willfully fails to appear at a discovery deposition and then is allowed to, with impunity, show up at trial and testify, the *** fairness *** that a trial should provide to both parties is lost.

* * *

*** [S]he ignored all attempts that we made to ensure a full and *** fair discovery and full and *** fairness in terms of preparation for trial. She ignored that entire process.

Your Honor, in not ruling on our motion for sanctions, permitted her to flaunt her willful disregard of your Honor's rulings and orders.

***

-15-

                    ***   [P]rejudice occurred.  And your Honor should address that.  And actually,

          should have addressed it the first time we presented that motion for sanctions so that ***

          maybe [petitioner] would have [agreed to be deposed]."

At that point, the trial court interjected to suggest that respondent should have asked that the trial be

continued so that petitioner could have been deposed, and counsel for respondent reminded the court

that it had denied prior requests for continuance.  The trial court replied that respondent did not

request a continuance on the day of trial.  However, in its later ruling on the motion for sanctions,

the trial court several times referenced the importance of the supreme court rules mandating quick

resolution of child custody cases, and it recalled that it denied motions for continuance in deference

to those rules.

          After further argument from counsel on both sides (petitioner at this point was again

represented by an attorney), the trial court suggested that petitioner give testimony regarding her

reasons for missing the depositions.  Her testimony began despite respondent's twice objecting that

petitioner had already admitted, via the request to admit, that her failure to appear at the deposition

was willful.  Upon the second objection, the trial court explained that it would "acknowledge that

[respondent's counsel was] correct" that petitioner had admitted she declined to show for a deposition

in an effort to avoid answering questions, but the court nonetheless allowed the testimony to

continue on the basis that the testimony would be useful "in regards to what the appropriate sanctions

should be for her not appearing."  During her testimony, petitioner stated that she was not

represented by an attorney when she missed the depositions and that she was distraught due to her

mother's medical problems.  On cross-examination, petitioner agreed that her mother had passed

three weeks before petitioner received respondent's request to admit, and she acknowledged having read the request to admit. The trial court then entered its ruling on respondent's sanctions motion:

"And I'd state on the record that [respondent's counsel] did suggest [on days prior to the trial date] *** perhaps there should be a continuance because [petitioner] was under some type of pressure from her family.

And I indicated *** at that time that I wasn't going to continue the case because we had our Supreme Court nine-hundred series rule here.[1]

* * *

On the date of the hearing, there wasn't a request to continue *** because I think [respondent's counsel] was as shocked as anybody else that [petitioner] showed up [for trial].

Therefore, I think that barring [petitioner's] testimony would be too onerous of a sanction ***.

However, I think there has to be some type of sanctions whether [petitioner] is pro se or not pro se.

* * *

*** [T]he court is going to impose some sanctions on [petitioner] for not showing up at the deposition that the court ordered her to appear [at].

---

[1]Supreme Court Rule 901 states that child custody proceedings shall be heard on an expedited basis (210 Ill. 2d R. 901), and Rule 922 requires a trial court to resolve a child custody proceeding within 18 months from the start of the action (210 Ill. 2d R. 922). As noted above, the first divorce petition in this case was filed in November 2007, and the trial began in June 2009. The child custody issues resolved during proceedings below are not at issue in this appeal.

She'll be required to pay any reasonable attorney's fees in regards to discovery motions that she never answered, motions to appear at the deposition that she never showed up for, the costs of those depositions, the costs of obtaining any request to admit facts that she denied at trial ***.

***

But the court will not retroactively bar her testimony. I think that would not be a just cause here."

After the trial court announced this ruling, respondent's counsel asked, "how does a monetary penalty address the prejudice that [respondent] incurred at trial through [petitioner's] testimony?" The trial court responded, "That's your argument for the appellate court." Respondent now timely appeals.

We begin with the prejudice argument the trial court felt was "for the appellate court." The parties do not dispute that petitioner committed a discovery violation by refusing to sit for her deposition, even after a court order directed her to do so. Petitioner also does not dispute that she judicially admitted having missed the deposition because she did not want to answer respondent's questions, nor does she argue that she should not have been subjected to some sanction for her violation. The parties' only disagreement is as to whether a sanction more stringent than a monetary penalty was warranted.

Respondent sought sanctions pursuant to Supreme Court Rule 219(c) (210 Ill. 2d R. 219(c)), which provides that, "[i]f a party *** unreasonably *** fails to comply with [a discovery order], the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just." 210 Ill. 2d R. 219(c). Rule 219(c) also contains a nonexclusive list of possible sanctions a trial court may impose, including debarring the offending party from presenting claims, defenses,

or witnesses relating to the discovery violation; entering judgment against the offending party on the issue affected by the discovery violation; and ordering the offending party to pay the costs and expenses caused by their misconduct. 210 Ill. 2d R. 219(c). "The decision to impose a particular sanction under Rule 219(c) is within the discretion of the trial court and, thus, only a clear abuse of discretion justifies reversal." Shimanovsky v. General Motors Corp., 181 Ill. 2d 112, 120 (1998). "A trial court abuses its discretion when it acts arbitrarily, without conscientious judgment, or, in view of all of the circumstances, exceeds the bounds of reason and ignores recognized principles of law, resulting in substantial injustice." In re Marriage of Haken, 394 Ill. App. 3d 155, 160 (2009). We can summon no more apt description of the trial court's actions here.

"To determine if the trial court abused its discretion, a reviewing court must look to the criteria upon which the trial court relied in making its determination of an appropriate sanction." Shimanovsky, 181 Ill. 2d at 123. "The factors a trial court is to use in determining what sanction, if any, to apply are: (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence." Shimanovsky, 181 Ill. 2d at 124. These factors should be applied to vindicate the purpose of Rule 219 sanctions, to ensure both discovery and a trial on the merits. Cf. Shimanovsky, 181 Ill. 2d at 123 (stating purpose of sanctions).

In the instant case, all of these factors unquestionably, and emphatically, favored respondent. Respondent was very obviously surprised by petitioner's testimony; respondent (and the trial court) had expected, based on petitioner's failure to appear at depositions and at prior court dates, that

petitioner would not even appear at the divorce trial. Instead, she appeared and asserted a defense (her story about her friend's checks) that respondent had no way of anticipating and thus was not prepared to rebut. The resulting prejudice to respondent was severe: because petitioner hid her defense from respondent, he was left unprepared to marshal evidence or argument to refute it once she raised it during her testimony. When he was unable to refute this testimony, the trial court found the testimony to be credible and used it as a basis for ruling against respondent. Thus, petitioner's surprise testimony cost respondent his claim for dissipation. The third factor--the nature of the evidence--supplies no reason it should not have been disclosed earlier, and, as noted, the evidence became critical to the resolution of the litigation. The record also indicates that respondent diligently pursued the hidden evidence--he many times sought, unsuccessfully, to compel petitioner's cooperation in discovery--and that respondent raised several timely objections to point out the discovery problems. Finally, petitioner admitted, and the trial court acknowledged, petitioner's bad faith in avoiding the court's order that she sit for a deposition.[2]

The trial court staunchly refused to account for the prejudice petitioner's malfeasance caused respondent, even despite respondent's counsel's repeated entreaties. In fact, after acknowledging petitioner's bad faith, the trial court forwent analysis of the remainder of the above factors and instead imposed a light sanction based solely on respondent's failure to seek a continuance on the day of trial, when it became apparent that petitioner would attempt to testify. The trial court's

---

[2]Petitioner argues on appeal that her family situation at least partially justified her failure to cooperate with discovery. However, she made a judicial admission that she avoided the deposition in order to avoid having to answer questions, and the trial court did not base its lenient sanction on any such personal problems.

rationale rings hollow for two reasons. First, its criticism of respondent for failing to seek a continuance came within moments of its directly contradictory statement that it declined to grant prior continuances due to the time constraints imposed by Supreme Court Rule 922. Although provision of time to interview a surprise witness (or examine undisclosed evidence) might in some instances temper the prejudice caused by a discovery violation (e.g., Burns v. West Chemical Products, Inc., 12 Ill. App. 3d 947, 956 (1973)), the trial court's claim that respondent should have sought this course is entirely untenable here. The trial court made quite clear in its sanctions ruling that it would have granted no continuances. Further, the trial court refused even to consider respondent's discovery complaints until after the trial; it was therefore unreasonable that the trial court would fault respondent for not seeking relief that the trial court refused to consider until after trial, when a delay for interviewing a witness would be meaningless.

The second reason we find specious the trial court's rationale for a light sanction is the point respondent implored the trial court to consider: the sanction the trial court imposed did nothing to cure the tremendous prejudice petitioner's actions caused respondent. As respondent now argues in his brief on appeal, the trial court's ruling allowed petitioner to gain advantage at trial by concealing her testimony and then presenting it with relative impunity (she received only a monetary sanction) at a trial that turned on the purported strength of her testimony. The purpose of the discovery rules, and of Rule 219, is to ensure a fair trial; the trial court's approach validated petitioner's gamesmanship to respondent's extreme detriment. The only rational cure for petitioner's admitted misconduct was that which respondent requested: barring her testimony and barring her from presenting undisclosed defenses. Since the trial court did not pursue this course, and instead entered a fecklessly lenient sanction that left respondent unfairly prejudiced, we conclude that the trial court

abused its discretion and thus that we must reverse its sanctions ruling. However, we reverse the trial court's sanctions ruling only to the extent it did not bar petitioner's testimony and bar her from presenting undisclosed defenses; we leave intact the portion of its order imposing a monetary penalty against her. Because the trial court's ultimate judgment was based largely on petitioner's testimony, we must vacate the trial court's final order and remand the cause with directions that the trial court reconsider its decision without resort to petitioner's testimony (or, if necessary, conduct a new hearing, again without petitioner's testimony).

Respondent's next argument on appeal is that the trial court erred in declining to find that petitioner had dissipated marital assets, because petitioner admitted as much when she failed to respond to his request to admit. We agree, and even if we were not to hold above that the trial court erred in imposing too lenient a discovery sanction, we would vacate its ruling that petitioner committed no dissipation of marital assets based on respondent's second argument.

Respondent alleged that petitioner dissipated three types of assets: bank funds, the marital home, and a $65,000 stock portfolio. We first address the stock portfolio. Supreme Court Rule 216, which governs requests to admit facts, provides that a party may submit to another party a request to admit facts, and, if the latter party fails to respond within 28 days, "[e]ach of the matters of fact *** of which admission [was] requested" will be deemed admitted. 134 Ill. 2d R. 216. The trial court refused to find that petitioner had dissipated (or concealed) a $65,000 stock portfolio; indeed, it refused to enter any finding whatsoever regarding the stock portfolio. Instead, when counsel for respondent asked the trial court to enter a finding regarding the portfolio, the trial court facetiously replied, "[i]f there's $65,000 in stocks, then by golly you get half of it. If there's not, you get half of what's there." The trial court's abdication of its duty to enter findings of fact was exacerbated by the

fact that its stance was premised on an obvious mistake the trial court could have avoided if it had deigned to listen to counsel. Petitioner had admitted the existence of the $65,000 portfolio; thus, there was no question "[i]f there[] [was] $65,000 in stocks." Per petitioner's admission, those stocks existed, at least as of 2006. The trial court should have considered them in its property distribution, and it should do so on remand.

On the issue of dissipation of bank funds and the marital home, the trial court determined that the request to admit was improper because it did not seek admissions of fact, but instead sought admission of the legal conclusions that several of petitioner's acts constituted dissipation. See P.R.S. International, Inc. v. Shred Pax Corp., 184 Ill. 2d 224, 236 (1998) (Rule 216 is limited to issues of fact and does not allow admissions of legal conclusions). The parties continue this line of inquiry on appeal by disputing whether a party may properly admit that it "dissipated" assets, that is, whether dissipation is a matter of fact or law for purposes of requests to admit. However, we do not reach that issue, because we determine that, even if dissipation were to be considered a conclusion of law, the remaining admissions at issue here, combined with the uncontested facts from the pleadings and testimony, established all the elements of dissipation.

In P.R.S. International, the supreme court explained the distinction between requests to admit facts and requests to admit law as follows:

"The key question is whether a requested admission deals with a question of fact. Accordingly, requests for legal conclusions are improper; however, requests for admissions of factual questions which might give rise to legal conclusions are not improper. For example, a party's conduct pursuant to a contract, including what actions that party did or did not take, would be a factual question properly included in a request to admit. However,

whether that conduct amounts to a material breach is a legal rather than a factual question, and thus is not appropriate for a request to admit. In subsequent filings, the other party may refer to that party's conduct under the contract and argue that it amounts to a breach, but the language of Rule 216 refers only to factual issues. Therefore, requests under Rule 216 must be limited to questions of fact." (Emphases in original.) P.R.S. International, 184 Ill. 2d at 236-37.

We expanded on this explanation in Hubeny v. Chairse, 305 Ill. App. 3d 1038 (1999):

"[A] request for admissions is proper if a finder of fact must take some analytical step, no matter how small, from the contents of the admissions to the final conclusion that the party seeks to establish. *** Even if the admission of that fact plainly requires the fact finder to conclude that a party breached a contract or was negligent as a matter of law, a request for that admission is proper and the failure to respond to it is binding." Hubeny, 305 Ill. App. 3d at 1043-44.

Thus, in Hubeny, the defendant's admission, that her disobeying a traffic signal and colliding with another motorist caused the other motorist to incur substantial property damages and over $9,900 in medical damages, constituted a proper admission of fact, even though it left "little doubt" that "a finding of negligence was a natural result." Hubeny, 305 Ill. App. 3d at 1044.

Here, even if we assume that "dissipation" is a legal conclusion and thus excise it from petitioner's admissions, the remainder of her admissions includes statements of fact that lead inevitably to the conclusion that she dissipated marital assets. Dissipation occurs where one party uses " ' "marital property for the sole benefit of [himself or herself] for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown." ' " In re Marriage

of Holthaus, 387 Ill. App. 3d 367, 374 (2008), quoting In re Marriage of O'Neill, 138 Ill. 2d 487, 497 (1990), quoting In re Marriage of Petrovich, 154 Ill. App. 3d 881, 886 (1987). Thus, a dissipation finding rests on findings that (1) the property at issue was marital property; (2) the spouse accused of dissipation used the property for his or her sole benefit for a purpose unrelated to the marriage; and (3) the spouse did so while the marriage was undergoing an irreconcilable breakdown.

On the first element, petitioner's admissions identify the dissipated assets (both the bank funds and the parties' home) as "marital" assets. On the second element, the admissions state that petitioner missed payments and "attempted to drive down the appraisal value of the home in order to lower the equity value of the home," a purpose decidedly unrelated to the marriage. As for the bank funds, petitioner more directly admitted that the withdrawals were used "for a purpose unrelated to the marriage." These admitted facts concede the first two elements of respondent's dissipation claim. As for the final element of dissipation, there is no dispute that the marriage was undergoing an irreconcilable breakdown when the dissipation allegedly occurred, starting in March 2007. As respondent notes in his reply brief, he testified that the parties had been separated since 2004, and petitioner did not dispute this testimony. In fact, petitioner indicated in her initial, November 2007 petition for dissolution that the parties had irreconcilable differences. Thus, regardless of whether the request to admit could properly ask petitioner to admit that she committed dissipation with respect to the bank funds and the marital home, it properly asked her to admit all of the factual elements comprising a dissipation claim. Accordingly, just as the trial court erred in refusing to consider petitioner's $65,000 stock portfolio, it erred in declining to find that petitioner had dissipated bank funds and the marital home, as described in the request to admit.[3] For this

---

[3]The trial court also implied that it declined to find dissipation because it thought respondent

reason, and for the reason that the trial court abused its discretion by imposing too lenient a discovery sanction against petitioner, we vacate the trial court's order and remand for further proceedings.[4]

Before so doing, we must also consider another issue respondent raises on appeal: whether the trial court erred by refusing to accept his physician's evidence deposition as substantive evidence of respondent's condition. Respondent offered the deposition as evidence of his inability to work, but the trial court very abruptly refused to consider it both times respondent submitted it. (The trial court then declined to award maintenance to respondent on the basis that there was no clear testimony regarding his inability to work.) The trial court offered two different justifications for each of its refusals, and we consider those justifications separately.

When respondent first offered the physician's deposition as evidence, the trial court reasoned that the deposition was inadmissible hearsay. Normally, the decision to admit or exclude evidence is a matter within the trial court's discretion and will not be overturned on appeal absent an abuse of

_____

had failed to notify petitioner of his dissipation argument. This notice rationale, however, cannot stand. As respondent attempted to argue to the trial court, petitioner largely avoided participating in the pretrial procedures during which the parties might have discussed respondent's claims. However, in any event, as respondent notes in his brief, his request to admit very clearly set forth his dissipation argument, and there is no dispute that petitioner received the request to admit. Thus, any surprise at trial was borne by respondent, not petitioner.

[4]The trial court also stated that it found viable petitioner's unusual explanation regarding the bank withdrawals. We need not address this rather dubious conclusion, however, because we hold above that petitioner's testimony should have been disregarded.

that discretion. E.g., Wilbourn v. Cavalenes, 398 Ill. App. 3d 837, 847-48 (2010). However, the trial court's first reason for refusing the evidence deposition involved no application of discretion; its refusal was based entirely on an interpretation of law. Our review of that therefore entails a question of law, which we review de novo. See Long v. Elborno, 397 Ill. App. 3d 982, 988 (2010) ("We conduct a de novo review of all questions of law").

The trial court's reasoning on this point, like its reasoning on many of the points above, cannot survive even passing scrutiny. It is true that hearsay--an out-of-court statement offered for the truth of the matter asserted--is normally inadmissible (People v. Wilson, 331 Ill. App. 3d 434, 440 (2002)), and it is also true that deposition testimony generally constitutes hearsay (see generally Berry v. American Standard, Inc., 382 Ill. App. 3d 895 (2008)). However, as respondent notes, and as respondent attempted to inform the trial court, Supreme Court Rule 212(b) (210 Ill. 2d R. 212(b)) allows "[t]he evidence deposition of a physician or surgeon [to] be introduced in evidence at trial *** regardless of the availability of the deponent." This rule allows a physician's deposition to be used as substantive testimony even if the physician does not appear at trial to testify in person and thus the deposition testimony is technically hearsay. Vicencio v. Lincoln-Way Builders, Inc., 204 Ill. 2d 295, 310 (2003) (Rule 212(b) "permit[s] physicians to give evidence depositions *** notwithstanding the strong preference for live testimony"). We therefore reject the trial court's first reason for refusing to allow respondent's physician's deposition testimony into evidence.

The second reason the trial court offered for its refusing to consider the deposition testimony was that respondent had laid inadequate foundation for its admission. However, to the extent the deposition itself would not have provided any missing foundation, we note that, upon hearing the trial court's new reason for excluding the evidence, respondent's counsel offered to elicit testimony

from respondent to establish the foundation for the testimony. As was its practice in this litigation, the trial court ignored respondent's counsel's point; instead of answering counsel, the trial court replied, "Any other witnesses" and thus refused to consider the matter further. In her brief on appeal, petitioner rightly makes no attempt to defend the trial court's behavior, nor any attempt to defend its "foundation" justification for refusing to consider respondent's evidence. In any event, if any foundation was needed, we conclude that the trial court erred by summarily refusing to allow respondent to provide that foundation. On remand, the trial court should allow respondent a full opportunity to present his physician's evidence deposition testimony.

For the foregoing reasons, we vacate the trial court's judgment and remand for further proceedings, as the trial court must redetermine the property and maintenance issues. On remand, the trial court may not consider testimony from petitioner, may not consider any undisclosed defenses raised by petitioner, must consider dissipation to have been judicially admitted, and must consider respondent's medical evidence deposition. Because we remand for the trial court to determine anew whether respondent is entitled to maintenance, we do not reach his argument that the trial court's now-vacated maintenance judgment was an abuse of discretion. Our ruling does not disturb the monetary sanction already imposed against petitioner.

Vacated and remanded with directions.

JORGENSEN and HUDSON, JJ., concur.