2022 IL App (2d) 190495
No. 2-19-0495
Opinion filed December 29, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF<br>COLLEEN A. KEEGAN, | ) ) | Appeal from the Circuit Court<br>of Du Page County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 14-D-565 |
| | ) | |
| JON C. PAPIN, | ) | Honorable |
| | ) | Robert E. Douglas, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    On December 19, 2018, after a bench trial, the trial court entered judgment dissolving the marriage between petitioner, Colleen A. Keegan, and respondent, Jon C. Papin. On January 25, 2019, the court issued a written memorandum, resolving outstanding issues and denying petitioner maintenance. Petitioner appeals, arguing that the trial court erred when it (1) granted respondent's motions to bar evidence pertaining to petitioner's alleged medical condition, (2) ordered her to not speak with her attorney about her testimony during trial recesses, and (3) denied her maintenance. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     The parties were married on February 11, 1989. Three children were born to the marriage, although all are now emancipated. Petitioner filed her petition for dissolution of marriage on March 21, 2014. Petitioner, age 61 at the time of dissolution, is a physician. Respondent, age 62 at the time of dissolution, is an attorney. Both are licensed to practice in Illinois.

¶ 4                     A. Respondent's Motions to Bar Medical Evidence

¶ 5                         1. First Motion to Bar Medical Evidence

¶ 6     Two years after petitioner filed her dissolution petition, on August 31, 2016, respondent moved to bar petitioner from raising at trial claims or defenses related to any of her alleged medical conditions. Respondent recounted in the motion his efforts to obtain from petitioner various medical information. Specifically, he noted that, during discovery, in response to interrogatories, petitioner had asserted that she suffered from neurological problems, namely back and neck injuries, that inhibited her ability to work. She alleged that it was unknown when the conditions would resolve. Accordingly, in October 2014, respondent requested that petitioner produce any documents pertaining to "any aspect" of the litigation, but petitioner did not produce any medical records. Respondent's counsel had scheduled petitioner's deposition for November 18, 2015; however, petitioner's counsel cancelled the deposition, asserting that petitioner could not appear on that date. According to the motion to bar, respondent's counsel tried numerous times via email and telephone to reschedule petitioner's deposition, to no avail.

¶ 7     Thereafter, the motion to bar recounted, respondent had moved the court to compel petitioner's deposition and the court granted the motion. Specifically, the court appointed a physician to conduct an examination of petitioner, pursuant to Illinois Supreme Court Rule 215 (eff. Mar. 28, 2011) (which provides that a court may order a physical examination of a party if

his or her physical condition is in controversy). Further, the court ordered both parties to sit for their depositions on December 21, 2015, starting at 10 a.m. Accordingly, respondent served upon petitioner an amended notice of deposition for December 21, 2015. The notice also requested production of documents supporting petitioner's claim of medical impairment, including any that she intended to use or admit at trial. Petitioner did not sit for the deposition on December 21, 2015, or produce any documents.

¶ 8 According to the motion to bar, petitioner had successfully moved to continue trial by alleging that she had been ill and required medical treatment. Thus, trial had been continued and the close of discovery extended until July 11, 2016. Accordingly, on June 3, 2016, respondent had requested that petitioner execute medical releases for every physician or medical professional she had seen with respect to her alleged neurological issues or any other alleged disability, such that pertinent records could be disclosed to the Rule 215 evaluating physician and respondent's counsel. The motion to bar noted that, on June 7, 2016, respondent had also moved to compel petitioner's production of medical documentation and medical releases.

¶ 9 On June 15, 2016, the court heard respondent's motion to compel. Although no transcript of the hearing appears in the report of proceedings, respondent's motion to bar recounted that petitioner's counsel had informed the court that petitioner had not submitted to a Rule 215 evaluation, because she was "kind of hoping that it went away." Because it had not gone away, counsel represented, petitioner would schedule the appointment. Further, according to the motion to bar, petitioner's counsel had stated that he was not certain that petitioner needed to sign the requested medical releases or that respondent was entitled to the records, because they contained privileged information; whether petitioner had waived the privilege, he opined, was another issue. The court disagreed and noted that petitioner had put her medical condition at issue by alleging

that she had a condition that prevented her from working. The motion to bar further recounted that the court informed petitioner's counsel that, "if you don't waive the privilege, I guess then when we get to [trial] I'm going to say you don't get to put on information. If you haven't released the records about it and they can't get the records, then you can't put the issue on." In addition, according to the motion, the court had noted to petitioner's counsel that, before tendering to respondent an affidavit of completeness, "you run at your own peril on that. If there's something that you haven't given them that comes up at the trial, then you know, I may bar testimony on that or do other things[.]" Further, the court ordered petitioner to schedule her Rule 215 examination within 14 days.

¶ 10    Apparently, in late June 2016, the Rule 215 examining physician requested certain medical records from petitioner. As of August 31, 2016 (two weeks before trial commenced), and despite additional requests from respondent's attorney, petitioner had not (1) provided any medical releases or medical records, (2) appeared for the Rule 215 examination, or (3) sat for a discovery deposition. According to respondent, petitioner had, however, on July 11, 2016, only two months before trial, disclosed *four* medical doctors she wished to call as witnesses at trial concerning her state of health, limitations on her ability to work, and their "treatment," "diagnosis," and "prognosis" of petitioner's conditions, again with no records ever disclosed relative to any of the doctors and in violation of requirements in Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) (concerning written interrogatories and the identity and testimony of witnesses). Respondent argued that petitioner claimed to suffer from medical issues inhibiting her ability to work and earn income and, thus, required maintenance, but she had evaded producing any documentation or other evidence to support her claims. Accordingly, pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) (consequences for failure to comply with court order or discovery rules), respondent

asked the court to bar petitioner and her witnesses from making any claims or defenses at trial relating to any alleged medical condition.

¶ 11    No written response to the motion to bar appears in the record, nor is there a transcript from when the court heard argument on the motion as part of the pretrial conference. On September 6, 2016, the court granted the motion, ordering that petitioner was barred at trial from introducing medical records and from testifying as her own medical expert, although she was permitted to testify as a lay witness.

¶ 12                    2. Second Motion to Bar Medical Evidence

¶ 13    The court held a bench trial over 10 days: (1) September 12, 2016, through September 16, 2016, (2) January 3, 2017, and (3) May 22, 2017, through May 25, 2017.

¶ 14    On December 8, 2016, after petitioner had commenced testifying at trial, respondent filed a second motion to bar petitioner from testifying about her alleged medical condition and to strike the testimony that she had already given on that topic. The motion alleged facts similar to those proffered in the first motion to bar. However, respondent further noted that petitioner had previously, on December 18, 2015 (a Friday), cancelled her court-ordered December 21, 2015 (a Monday), deposition on the basis that she had experienced a medical emergency and testing was scheduled for December 21, 2015. Respondent asserted that he had recently acquired evidence that cast doubts on the validity of petitioner's purported medical emergency and testing—namely, that petitioner had spent that December weekend in a hotel in downtown Chicago, visiting the theatre, shopping, and going out to eat with her daughters. Respondent alleged that petitioner's actions refuted her claims of a medical emergency, she was apparently physically able to sit for the court-ordered deposition on December 21, 2015, and her cancellation was in bad faith. Respondent noted that, when he filed his first motion to bar, he did not have in his possession some of the

documentary evidence to establish petitioner's activities on the weekend in question. Moreover, he continued, because she had never produced any medical records, he had neither a reason nor the ability to confirm or disprove that she had the medical emergency on December 18, 2015, or testing on December 21, 2015. Relying on *In re Marriage of Daebel*, 404 Ill. App. 3d 473 (2010), respondent argued that the appropriate remedy was to strike petitioner's trial testimony and bar additional testimony. Because petitioner intentionally refused to sit for her deposition, respondent was prejudiced by the surprise of not knowing what she would testify to at trial regarding her medical condition.

¶ 15    In a written response, petitioner asserted that she had been scheduled for an MRI examination on December 21, 2015, but, due to increasing pain, had requested that it be moved earlier. Accordingly, when, "[l]ate in the afternoon of December 18, 2015," petitioner was notified of an appointment available that evening at 7:30 p.m., she accepted it and underwent the examination. After the procedure, a technician advised her to retain the December 21, 2015, appointment, in case follow-up was necessary. Thus, petitioner alleged, as of December 18, 2015, she was unable to attend the December 21, 2015, deposition. However, she was "ready, willing and able to submit to a deposition *after* December 21, 2015" (emphasis added), yet respondent made no attempts to reschedule.

¶ 16    On January 3, 2017, prior to resuming trial testimony, the court allowed respondent to examine petitioner concerning the substance of the motion to bar. Petitioner testified first that she had never agreed to a deposition on November 18, 2015, as her brother was very ill. As related to the court-ordered deposition that she cancelled, petitioner confirmed that, from December 19, through December 21, 2015, she stayed at the Swissôtel in Chicago with her two daughters. They ate dinner at RPM Italian, where she had one glass of wine; shopped at Macy's; went to a cuticle

nail salon; and saw a show at the Goodman Theatre. Petitioner explained that the weekend experience was her Christmas gift to her daughters. She confirmed that she had been experiencing severe abdominal pain and, on December 17, 2015, scheduled an MRI for December 21, 2015. Because of increasing pain, she asked to move up the examination. On December 18, 2015, around 4:30 p.m., she learned that an appointment was available that same evening. However, a technician told her to retain the Monday appointment in case there was a problem with the imaging. She learned over the weekend, probably on Sunday, that the December 21, 2015, appointment was not necessary. Petitioner agreed that she had not produced to the court or respondent any documents that reflected any scheduling of medical testing on December 21, 2015, and, further, that no testing took place on that date. Petitioner testified that, after she cancelled the deposition, respondent did not ask to schedule another one. She also confirmed, however, that neither at the time she cancelled nor thereafter did she offer any future dates when she would be available for the deposition.

¶ 17    After hearing argument and reviewing the *Daebel* decision, the court ordered petitioner's testimony regarding her medical condition stricken from the record and barred petitioner from testifying regarding same. The court noted that, although *Daebel* contained factual differences, it set forth specific factors for assessing the propriety of sanctions under Rule 219(c). The court explained it had considered those factors, particularly those concerning surprise to the adverse party and the prejudicial effect of the proffered testimony and evidence. The court found that, while petitioner's failure to appear for her December 21, 2015, deposition was not "willful," petitioner's argument that it was incumbent upon respondent to "follow up and continually ask for additional dates" was "somewhat suspect." The court continued,

> "Once a deposition has been set and ordered by the Court, if a party, for whatever
>
> reason, has to cancel, it is incumbent upon them [*sic*] to seek a time when the deposition

should be rescheduled when they are canceling. To say, well, maybe if they don't ask, we will get away with not having to give the deposition at all flies in the face of the discovery rules.

The court had ordered this deposition. It was incumbent upon [petitioner] to find a time when the deposition could be done if it was not done at the time which the court ordered."

¶ 18    The court found substantial surprise and prejudice in that, because there were no medical records produced—and the court had consequently barred the introduction of such records—and petitioner had not been deposed, respondent had no advance notice of what conditions petitioner was testifying to and no time to prepare a response. It found that, in terms of petitioner's alleged medical condition, she had taken advantage of respondent. After granting respondent's motion, the court acknowledged that it had thrown a "large monkey wrench" into petitioner's case and, accordingly, offered petitioner time to "regroup" until the next court date. It also, at petitioner's request, entered language pursuant to Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that the order was final and immediately appealable. Petitioner's counsel noted for the court that respondent did not offer any evidence that petitioner had *not* offered additional deposition dates or that she did not make herself available for another deposition. The court responded that it had considered the fact that "the testimony was that they did not ask for the deposition, not that any dates were not presented," although this did not change its ruling.

¶ 19    Petitioner did not then appeal. Rather, on January 12, 2017, petitioner moved the court to reconsider. On February 1, 2017, the court denied the motion.

¶ 20            B. Instructions that Petitioner Not Discuss Testimony with Counsel

¶ 21    Petitioner first testified at trial on September 12, 2016. At the end of the day, the court informed her that, because she was still "on the stand," she could not discuss her testimony with anybody, including her attorneys. She replied that she understood.

¶ 22    At the end of the day on September 13, 2016, the court informed respondent, at the end of his testimony, that he could not discuss his testimony with anyone, including his attorneys, before returning to the stand the next day. He replied that he understood.

¶ 23    At the end of the day on September 15, 2016, the court reminded petitioner that she could not discuss her testimony with anyone, including her counsel, before returning to trial, although there was a "long time" before the next trial date, *i.e.*, January 3, 2017. She again responded that she understood. Petitioner's counsel, however, asked the court to clarify whether it meant that he could not discuss with petitioner only her *previous* testimony. The court explained that its instruction included future testimony, because, "if we were continuing tomorrow, you couldn't be discussing her future testimony with her[,] so" counsel was not to discuss petitioner's testimony from "any time." Counsel thanked the court and explained that he had just wanted to clarify.

¶ 24    When the parties returned on January 3, 2017, the court first addressed respondent's motion to bar petitioner's testimony. Before proceeding on the motion, petitioner's counsel reminded the court that he had been instructed to have no discussions with petitioner concerning her past and future testimony, which he took to mean any future testimony, including any that would relate to the issues raised in the motion to bar. Counsel requested time to discuss the motion with petitioner and to prepare some clarification testimony with her, if necessary. The court asked petitioner and counsel how long they would like to prepare, and counsel requested until the afternoon. The court agreed, "Okay. I will give you that." In addition, the court asked petitioner's counsel to report back

after 20 minutes whether he needed "more time, less time, whatever." Further, the court explained that petitioner and counsel could substantively discuss what was "within the four corners of the motion" to bar.

¶ 25    After the break, when petitioner was called to testify regarding the motion, respondent's counsel commenced his questioning by asking her whether she met with her attorney the day before, on January 2, 2017. She responded that she had done so with a friend, Julie Gleason, who was present during petitioner's meeting with her attorney. They discussed and prepared financial information, including her bank statements and a summary of respondent's spending. Later, during a break in petitioner's testimony, the court reminded her that she could not discuss her testimony with anyone during the break.

¶ 26    On May 22, 2017, the court noted that petitioner's counsel could discuss with her respondent's testimony, but not her own testimony.

¶ 27    On May 23, 2017, the court reminded respondent that he could not discuss his testimony with anyone before returning the next day. He responded that he would not do so.

¶ 28    Finally, on May 24, 2017, the court reminded petitioner that she was still on the stand and could not talk about her testimony with anybody, including her attorneys. The court explained, "That doesn't mean you can't talk to them, just not about your testimony, okay?" Petitioner asked whether the same instruction applied to respondent, and the court answered, "[w]hen they were done, he's off the stand. So[,] he can talk with them about whatever he wants now. But I gave him the same admonishment yesterday and the day before when he was on the stand."

¶ 29                                 C. Judgment

¶ 30    On December 19, 2018, the court dissolved the parties' marriage, and on January 25, 2019, the court filed a judgment and written opinion, resolving remaining issues. The court found that

both parties throughout the litigation had "disregarded and flaunted Court orders. Both parties have engaged in intentional deceits, at worst, and or misrepresentations, unintentional or not, at best, to the Court." It divided equally the marital property and assigned each party his or her own respective debts.

¶ 31 The court further found that petitioner had not established a medical condition precluding her from working. Specifically,

"11. Petitioner's claim of disability is not supported by the evidence. Because of her refusal to sit for her deposition and failure to produce medical records, Petitioner was barred from presenting medical evidence regarding her alleged disability. Petitioner testified, as a lay witness regarding her condition and had a friend, Dr. Jenson, an OB-GYN, testify as to her observations of Petitioner. This testimony, by Dr. Jenson, was not considered by the Court as expert testimony inasmuch as Dr. Jenson was never timely disclosed as an expert and Dr. Jenson does not practice in the specialty involved in Petitioner's alleged disability. The Court gave minimal weight to this testimony. Petitioner also presented letters written by Respondent during litigation involving a dispute with a disability insurer. Respondent avers in these letters that the Petitioner is permanently disabled. The Court discounts these statements as posturing made as part of a settlement negotiation undertaking by an attorney on behalf of a client. The Court heard unrebutted testimony of Petitioner's travels with her children and on her own. Many of these travels included activities, sitting and standing, that Petitioner alleged her disability precludes her from doing. Without competent, contemporaneous, to the time of trial, expert testimony on the issue of disability the court finds it to be unsupported."

¶ 32    Further, after considering the relevant factors in section 504 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/504 (West 2018)), the court found that no maintenance award was appropriate for either party. Specifically, the court found unsupported by the evidence petitioner's testimony that she was virtually unable to work due to her physical condition. The court instead found that, as a dermatologist working part time, petitioner earned $93,000 per year and "[f]ull time employment would be expected to yield, at least, double this amount." The court also found that respondent claimed to earn $100,000 as his base salary. Accordingly, the court found maintenance for either party would be inappropriate. However,

> "given the past earnings history of the [p]arties and the court's finding that both [p]arties have been deceitful with the Court, maintenance is reserved for 36 months at which time it shall be forever barred unless prior thereto a petition for maintenance alleging a change from the current circumstances is presented by one of the [p]arties."

¶ 33    Petitioner moved the court to reconsider, arguing in part that the court, for numerous reasons, erred in its maintenance decision. On May 13, 2019, for the "reasons stated on the record," the court denied the motion, except to the extent that it had reserved maintenance for respondent. Instead, the court ordered that respondent was forever barred from the receipt of maintenance from petitioner. No transcript from the May 13, 2019, hearing appears in the record.[1]

---

[1]On August 3, 2022, this court denied petitioner's motion to supplement the record with the transcript from the May 13, 2019, hearing on her motion to reconsider, noting that respondent had already filed his appellee's brief, relying on the absence of the subject report of proceedings.

¶ 34    On June 11, 2019, petitioner filed her notice of appeal, and, on June 21, 2019, respondent filed a notice of cross-appeal.[2]

¶ 35                                    II. ANALYSIS

¶ 36                                 A. Medical Evidence

¶ 37    On appeal, petitioner argues first that the court erred in barring admission of records and testimony concerning her medical condition, as well as striking her testimony from the record. She argues that sanctions under Rule 219(c) should balance both discovery and a trial on the merits and, where the court found her actions not willful, barring the records and testimony was unduly punitive. Petitioner notes that the trial court acknowledged significant factual differences between this case and *Daebel* yet erroneously relied on that decision, particularly where the issue in *Daebel* was whether the sanctions were too lenient, given that the sanctioned party had admitted that she did not appear for her deposition because she did not want to answer questions. In contrast, petitioner argues, the court here found her actions were *not* willful. According to petitioner, "[t]he idea of a nonwilful [*sic*] discovery violation is an oxymoron." Further, plaintiff notes, the court erred and violated Rule 219(c), where its written order barring evidence did not include the specific reasons and bases for its imposed sanction. Instead, the written order only briefly noted, without reasons, that her testimony regarding her medical condition was stricken from the record and that she was barred from testifying regarding her medical condition. Petitioner concludes that the order

_____

[2]Although respondent filed a notice of cross-appeal, he has since "waived" his cross-appeal, filed no briefs in support of a cross-appeal, and, instead, responds only to petitioner's appellate arguments.

barring medical evidence should not have been granted and requests that we vacate the judgment and remand for a new trial. For the following reasons, we reject petitioner's arguments.

¶ 38    Rule 219(c) permits a trial court to impose sanctions "upon any party who *unreasonably* refuses to comply with any provisions of [the supreme] court's discovery rules or any order entered pursuant to these rules." (Emphasis added.) *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120 (1998). Further, Rule 219(c) provides a nonexclusive list of possible sanctions that a court may impose, including preventing a party from maintaining a claim or defense and barring testimony. Ill. S. Ct. R. 219(c)(iii), (iv) (eff. July 1, 2002). In addition, Rule 219(c) provides that, "[w]here a sanction is imposed under this paragraph (c), the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." Ill. S. Ct. R. 219(c) (eff. July 1, 2002).

¶ 39    The purpose of a Rule 219 sanction is to "effect discovery, not to punish the dilatory party." *Kubian v. Labinsky*, 178 Ill. App. 3d 191, 196 (1988). Indeed, "[a] just order of sanctions under Rule 219(c) is one which, to the degree possible, insures both discovery and a trial on the merits." *Shimanovsky*, 181 Ill. 2d at 123. We will not reverse a court's imposition of Rule 219 sanctions absent a clear abuse of discretion. See *Fraser v. Jackson*, 2014 IL App (2d) 130283, ¶ 28. An abuse of discretion occurs only where no reasonable person would agree with the court's ruling. See, *e.g.*, *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 23.

¶ 40    Before turning to the substance of petitioner's argument, we must address two preliminary matters raised by respondent. First, respondent asserts that we should deem forfeited petitioner's arguments because, although she included in her brief a section listing various standards of review, she did not link any standard to a specific argument and, thus, the arguments here are undeveloped and violate Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). Respondent is correct that, in

her argument section, petitioner does not apply the abuse-of-discretion standard to her contentions of error; rather, she simply recites her arguments and alleges error generally. However, petitioner's standard-of-review section in her brief lists three standards in an order that we infer corresponds to the order in which the issues are raised on appeal, including (correctly) that an appellate court may reverse a trial court's imposition of a discovery sanction only when the record establishes an abuse of discretion. Accordingly, we decline to find her arguments forfeited.

¶ 41    Second, respondent notes that the record contains no transcript of the September 6, 2016, pretrial conference hearing, wherein the court heard argument on respondent's first motion to bar. Petitioner, as appellant, bears the burden of presenting a sufficiently complete record of the proceedings at trial to support her appellate arguments. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "In the absence of a complete record, the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis." *Fraser*, 2014 IL App (2d) 130283, ¶ 22. "In fact, when the record on appeal is incomplete, a reviewing court should actually 'indulge in every reasonable presumption favorable to the judgment from which the appeal is taken, including that the trial court ruled or acted correctly.' " *Smolinski v. Vojta*, 363 Ill. App. 3d 752, 757-58 (2006) (quoting *People v. Majer*, 131 Ill. App. 3d 80, 84 (1985)).

¶ 42    Here, petitioner raises both the court's exclusion of medical evidence (first motion to bar) and its exclusion and striking of her testimony (second motion to bar); however, she focuses her argument on the court's second decision, which excluded her testimony even after finding that her failure to appear for the deposition was not willful. As such, and because we have no transcript of the September 6, 2016, proceedings from which to assess whether the court abused its discretion, we presume that the court's first order barring medical evidence was in conformity with the law

and had a sufficient factual basis. We note that petitioner's reliance on *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314 (2003), and *Candice Co. v. Ricketts*, 281 Ill. App. 3d 359 (1996), is misplaced here, as those cases reflect that, when the issue being reviewed is subject to *de novo* review, the absence of a hearing transcript does not preclude review. While this is true, the issue before us, as petitioner points out, concerns the court's exercise of its discretion. See, *e.g.*, *Illinois Founders Insurance Co. v. Williams*, 2015 IL App (1st) 122481, ¶ 56 (absence of a report of proceedings or acceptable substitute frustrated abuse-of-discretion review).

¶ 43    Accordingly, having resolved the two preliminary issues, we may now address the court's decision to bar petitioner's medical testimony and strike such testimony from the record. In short, we simply cannot determine that the court's decision was an abuse of discretion.

¶ 44    First, although petitioner focuses on the court's finding that her failure to sit for the December 21, 2015, deposition was not willful, we note that Rule 219(c) does not require willful conduct; rather, it explicitly provides that a court may impose sanctions when the discovery or rule violation was "unreasonabl[e]" or where a party simply "fails to comply." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Here, in full context, the court was aware that petitioner had not produced any medical documentation to support her claim of medical impairment and, accordingly, it had already barred such evidence. Consequently, the second motion to bar asked the court to consider, particularly given those facts, whether it was reasonable to allow petitioner to testify to her medical conditions when she *also* had not submitted herself for the court-ordered Rule 215 examination or the court-ordered deposition on December 21, 2015. Petitioner's testimony may have convinced the court that the December 21, 2015, deposition was not necessarily cancelled with intent to violate the court's order, and she claimed to be "ready, willing and able to submit to a deposition after December 21, 2015." Nevertheless, the court considered the factors mentioned in *Daebel* and

found unreasonable that she cancelled the court-ordered deposition without ever offering alternative dates.[3]

¶ 45    In *Daebel*, the petitioner declined to appear at a scheduled deposition, which had been delayed multiple times, purportedly due to her preoccupation with her mother's ill health. *Daebel*, 404 Ill. App. 3d at 475. The respondent moved to compel her appearance at a deposition, and the court granted that motion. Nevertheless, the petitioner did not appear and later admitted that she did not appear because she did not want to subject herself to questioning. *Id.* at 475-76. Prior to trial, the respondent moved for a discovery sanction, including an order barring the petitioner from testifying. *Id.* at 476. The court continued the motion, waiting to rule until after the petitioner had testified at trial, and it (1) found that striking the petitioner's testimony was too onerous a sanction, (2) suggested that the respondent could have moved to continue the trial to take the petitioner's deposition, and (3) imposed upon the petitioner only monetary sanctions. *Id.* at 485.

¶ 46    This court reversed, holding that the sanctions were too lenient and did nothing to cure the prejudice that the respondent suffered from the petitioner's testimony. *Id.* at 487-88. We noted that the factors a court must consider in determining whether and what sanctions should be applied pursuant to Rule 219(c) include (1) surprise to the adverse party, (2) the prejudicial effect of the testimony or evidence, (3) the nature of the testimony or evidence, (4) the adverse party's diligence

---

[3]We note that, although, at the end of the hearing, petitioner's counsel and the court agreed that there was no testimony that petitioner did *not* offer alternative dates, their recollections were incorrect. Petitioner was specifically asked on redirect examination if, when she cancelled the deposition on December 18, 2015, or at any point thereafter, she offered any future dates to sit for deposition and she responded "No" to both questions.

in seeking discovery, (5) the timeliness of the adverse party's objection to the testimony or evidence, and (6) the good faith of the party offering the testimony or evidence. *Id.* at 486-87. Applying those factors, we concluded that they "unquestionably, and emphatically" favored the respondent and that the court's rationale that the respondent could have sought a continuance rung hollow because it would not have been granted. With respect to prejudice, we noted that the court's ruling allowed the petitioner to

> "gain advantage at trial by concealing her testimony and then presenting it with relative impunity (she received only a monetary sanction) at a trial that turned on the purported strength of her testimony. The purpose of the discovery rules, and of Rule 219, is to ensure *a fair trial*; the trial court's approach validated [the] petitioner's gamesmanship to [the] respondent's extreme detriment." (Emphasis added.) *Id.* at 487-88.

As such, we held that the court should have barred the petitioner's testimony. *Id.* at 488.

¶ 47    Here, petitioner notes that, unlike in *Daebel*, where the petitioner admitted to willfully failing to attend her deposition, the trial court here found she did *not* willfully fail to attend. She cites other cases where, because the parties' actions were not shown to be willful or contumacious refusals to comply with discovery, courts reversed discovery sanctions. However, in those cases, the trial courts had *dismissed* the causes of action or ordered a new trial as the sanction. See *Shimanovsky*, 181 Ill. 2d 112; *Gallo v. Henke*, 107 Ill. App. 3d 21 (1982); *Lubbers v. Norfolk & Western Ry. Co.*, 147 Ill. App. 3d 501 (1986). Here, the sanction was significantly less severe, and, in any event, the propriety of a sanction will always depend on the overall facts of the case. Further, while we believe that the court here *could* have made a proper finding of willfulness, particularly given its prior warning to petitioner that a failure to support her medical claims could result in evidence being barred, the court's finding to the contrary does not give rise to error here. We note

- 18 -

again that Rule 219(c) refers only to "unreasonable," not "willful," violations. See also *Ideal Plumbing Co. v. Shevlin-Manning, Inc.*, 96 Ill. App. 3d 207, 210 (1981) (rejecting claim that sanctions were improper where conduct was inadvertent and noting that the question whether the violation was "unreasonable" rests not on intent but, rather, the importance of the information). In any event, the trial court's finding that petitioner's failure to attend was not "willful" does not warrant a conclusion that the sanction was inappropriate. Indeed, in our opinion, *Daebel* reflects that, while petitioner's intent is appropriately considered in the sixth, "good-faith" factor for assessing sanctions, it is but *one* piece that the court must consider when seeking to achieve Rule 219(c)'s goal of a fair trial. See also *Shimanovsky*, 181 Ill. 2d at 124 (reviewing the six factors and noting that no single one is determinative). Here, the court addressed each factor and, overall, found that barring petitioner's medical records and testimony furthered the goal, not of punishment, but of fairness. We do not find unreasonable the court's assessment.

¶ 48    Specifically, with respect to the first two factors, because petitioner had not produced any documentation of her alleged medical impairment and had not submitted to the court-ordered deposition, all testimony that she presented about her health constituted surprise information and was prejudicial to respondent because he had no opportunity to prepare a rebuttal. As to the third factor, the nature of the evidence was important because it went to the heart of petitioner's claim that respondent should pay significant maintenance to her on account of her inability to work due to alleged medical conditions. With respect to the fourth and fifth factors, respondent was diligent about seeking discovery and timely in his objection. Specifically, in 2014, he began seeking discovery relative to petitioner's claimed medical condition; in 2015, his counsel tried to reschedule petitioner's cancelled deposition and successfully moved the court to compel her deposition; he served petitioner an amended notice of deposition for December 21, 2015, in

compliance with the court's order; in 2016, he requested that petitioner execute medical releases, moved to compel petitioner's production of medical documentation, and, ultimately, moved to bar petitioner from presenting any medical evidence at trial when, two weeks prior to trial, she had not produced any to respondent. While his second motion to compel was filed after trial commenced and petitioner had testified, there was no dispute that the basis for the motion derived from new evidence suggesting that petitioner had not in good faith cancelled the deposition.

¶ 49    Finally, with respect to the sixth factor, we appreciate that the court found that petitioner's deposition cancellation was not willful. However, as mentioned, a proper finding that it was could have been made. Certainly, the record does not reflect that, overall, petitioner acted in good faith. Indeed, the court noted that, with respect to petitioner's alleged medical condition, she had taken advantage of respondent. It commented that her attempt to "get away with not having to give the deposition at all flies in the face of the discovery rules." To the extent it reflects on petitioner's good faith, we note that her counsel told the court that she had not yet submitted to a Rule 215 examination because she was "kind of hoping that it went away." Again, *petitioner* is the party who made an issue of her own medical condition by claiming an inability to work and seeking maintenance on account of it. By the time trial commenced, more than two years had passed since she filed her dissolution petition, yet on no occasion did she produce any medical records or participate in either the court-ordered deposition or the court-ordered Rule 215 examination, despite the fact that, on June 15, 2016, the court apparently warned petitioner's counsel that failing to release medical records or raising information at trial that had not been produced to respondent could result in the records or testimony being barred. Although we have great sympathy for ill health, it is simply not fair to use ill health as a shield from discovery, while simultaneously using it as a sword with which to seek maintenance or other recovery.

¶ 50    Petitioner asserts that the trial court's comments recognizing that its ruling threw a "monkey wrench" into her case reflects that it recognized its order was punitive. We disagree. The court simply recognized that petitioner's case would be affected by the ruling, and it charitably offered petitioner time to regroup and, if she wished, the opportunity to appeal the order. She did not do so. In light of petitioner's actions, the court properly balanced the relevant factors to fashion an appropriate sanction that would achieve the goal of discovery and Rule 219(c), *i.e.*, a fair trial.

¶ 51    Finally, we reject petitioner's argument that we should reverse the trial court's judgment because its written order barring and striking her medical records and testimony did not list the specific reasons and bases for its imposed sanctions. While the court in *McGary v. Illinois Farmers Insurance*, 2016 IL App (1st) 143190, ¶ 44, vacated and remanded written sanction orders that violated Rule 219(c)'s provision that they specify the bases for the sanctions, it noted,

> "Failure to provide these written reasons for the contempt and sanction orders clashes with plain language of Rule 219(c) and has consequences for *our ability to decide the issues*. The purpose of Rule 219(c) is to inform the parties of the reasoning for the trial court's decision and to make a record for appellate court review; in this case, the parties might know what the trial court was thinking but *we do not*." (Emphases added.) *Id.* ¶ 48.

Further, the court noted that other appellate courts have held that an order may be affirmed, even absent specific reasons in the written order, when entered in accord with a written motion or where the reason for the sanction can be surmised from the record. *Id.* ¶ 46; see, *e.g.*, *Chabowski v. Vacation Village Ass'n*, 291 Ill. App. 3d 525, 528 (1997).

¶ 52    In this case, the record is replete with the trial court's warnings of a specific consequence for petitioner's failure to support her medical claims. Our ability to decide petitioner's issue concerning the sanction is in no way hindered by the absence of the court's reasons in the written

order. We know exactly what the court was thinking, because, not only was a sanction entered in accord with respondent's written motion (to which petitioner filed a written reply), but also the written order reflects that the parties appeared before the court for a hearing on respondent's motion and the transcript from that hearing lists the court's rationale with specificity. Further, the record overall provides the context and rationale for the court's ultimate decision. Thus, while the written order itself did not list every reason with specificity, the court's ruling and rationale were perfectly clear.

¶ 53    In sum, the trial court did not abuse its discretion in barring petitioner's medical records and testimony.

¶ 54                                 B. Discussions with Counsel

¶ 55    Next, petitioner argues that the trial court violated her due process right to counsel where it prohibited her from discussing her testimony with counsel when trial recessed. Petitioner notes that some trial recesses were lengthy, with one lasting almost 100 days. As such, she asserts that the court's instruction prohibiting her from discussing her testimony with counsel during those recesses "for all intents and purposes" deprived her of the benefit of legal representation, which, according to petitioner, is a protected due process right. Further, citing *People v. Gawlak*, 2019 IL 123182, ¶ 31, and *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1104 (5th Cir. 1980), petitioner notes that, because due process implicitly includes a civil litigant's right to retain counsel, prohibiting communication between a testifying party and his or her attorney during an overnight recess from the witness's testimony impinges on that due process right. Petitioner argues that prohibiting her from discussing her past and future testimony with counsel during a recess that exceeded 100 days, as well as at other times, certainly impinged on her right to retain hired counsel. She asks that we reverse and remand for a new trial.

¶ 56    Preliminarily, respondent reasserts his argument that petitioner has failed to properly present and develop her argument by applying an appropriate standard of review, thus warranting a forfeiture finding. Again, although petitioner does not explicitly apply it to her argument, in her standard-of-review section, petitioner asserts that we review *de novo* claims of due process deprivations. We accordingly presume that this is the standard petitioner wishes to apply to her argument. Further, respondent does not disagree that, generally, procedural due process claims are reviewed *de novo*. See, *e.g.*, *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201 (2009); *Key v. Aurora Housing Authority*, 2020 IL App (2d) 190440, ¶ 10. Accordingly, we decline to find forfeited petitioner's arguments. Nevertheless, for the following reasons, we reject them.

¶ 57    Petitioner's assertion that, in this civil case, she possesses a constitutional right to discuss her testimony with counsel during court recesses is incorrect. Although civil litigants generally possess a due process right to *obtain* private counsel of choice, even that right is not absolute. See *Gawlak*, 2019 IL 123182, ¶¶ 31, 33. Petitioner relies on a Fifth Circuit decision, *Potashnick*, which held that a trial judge's ruling prohibiting a civil litigant from consulting with his attorney during breaks in the litigant's testimony impinged on his constitutional right to retain hired counsel. *Potashnick*, 609 F.2d at 1118. However, for three reasons, petitioner's reliance on this case is misplaced. First, the *Potashnick* court based its decision on *Geders v. United States*, 425 U.S. 80, 88, 91 (1976), where the United States Supreme Court held that a trial court's order prohibiting a criminal defendant from consulting with his attorney " 'about anything' " during a 17-hour, overnight recess between his direct and cross-examinations impinged upon the defendant's sixth amendment right to counsel. In so holding, the Court noted the type of communications that may occur between an attorney and his or her client during trial recesses, such as making tactical decisions or discussing the significance of the day's events. *Potashnick*, 609 F.2d at 1118-19.

¶ 58    Second, the court in *Potashnick* also noted the distinctions between the rights of civil and criminal litigants, including that a civil litigant's right to retain counsel is rooted in fifth amendment due process notions, as opposed to the sixth amendment. Further, a criminal defendant faces higher stakes, including loss of liberty, than a civil litigant seeking or contesting damages, "and for this reason the law affords greater protection to the criminal defendant's rights." *Id.* at 1118.[4]

¶ 59    Third, and as noted, *Potashnick* relied primarily on *Geders*, in which the Court considered a criminal defendant's inability to consult with counsel on any matter during an overnight recess. The Court *subsequently*, however, decided that even a criminal defendant has no constitutional right to consult counsel *while testifying*. *Perry v. Leeke*, 488 U.S. 272, 281 (1989). Specifically, after holding that a showing of prejudice is not required where the right to counsel has been violated,[5] and noting that the "thin" line between its present case and *Geders* was one of constitutional dimension, the Court explained:

---

[4]We note that the Seventh Circuit Court of Appeals apparently does not subscribe to *Potashnick*. See *Securities & Exchange Comm'n v. Cherif*, 933 F.2d 403, 416 n.16 (7th Cir. 1991) ("[One defendant] cites *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1117 (5th Cir.1980), for the proposition that civil litigants have a right to counsel based in the Fifth Amendment due process clause (Br. 27). This Circuit has never adopted this ruling.").

[5]Respondent's cited cases touch upon the concept of prejudice and predate *Perry*, and, therefore, we do not find them particularly helpful here. See, *e.g.*, *Commonwealth Edison Co. v. Danekas*, 104 Ill. App. 3d 907 (1982); *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 61 Ill. App. 3d 636 (1978).

"The distinction rests instead on the fact that when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying. He has an absolute right to such consultation before he begins to testify, but neither he nor his lawyer has a right to have the testimony interrupted in order to give him the benefit of counsel's advice." *Id.* at 280-81.

¶ 60    The Court further noted that it is "common practice" for judges to instruct witnesses not to discuss testimony with third parties, including attorneys, until the trial is completed and that, when a defendant assumes the role of witness, "the rules that generally apply to other witnesses—rules that serve the truth-seeking function of the trial—are generally applicable to him as well." *Id.* at 281-82. In addition, the Court distinguished short recesses from long ones and explained that, in *Geders*, barring the defendant from consulting with counsel overnight impacted the normal consultation on matters *beyond* the defendant's own testimony, and the controlling concern in the context of a long recess is the right to consult counsel for advice on a variety of trial-related matters. *Id.* at 284. Finally, the Court noted that whether to allow consultation between a defendant and his or her counsel during brief recesses is within the trial court's discretion: "We merely hold that the Federal Constitution does not compel every trial judge to allow the defendant to consult with his lawyer while testimony is in progress if the judge decides that there is a good reason to interrupt the trial for a few minutes." *Id.* at 284-85.

¶ 61    Subsequently, the court in *Reynolds v. Alabama Department of Transportation*, 4 F. Supp. 2d 1055 (M.D. Ala. 1998), rejected the argument that, in a civil context, a trial court improperly prohibited an attorney from consulting with witnesses during breaks in their testimony. The court summarized *Geders*, *Potashnik*, and *Perry* to conclude:

"the scope of a civil party's right to access to his counsel, and thus the scope of the counsel's right to access to a civil party, is clear. A civil party does not have a right to consult with his counsel at any time about any matter during the course of his or her testimony. Rather, the trial court has broad powers to control the progress of testimony before it. This broad power is, however, limited by a testifying party's right to engage in such non-testimonial matters as giving and receiving information and working on the presentation of his or her case through strategizing, developing tactics, and generally managing the progress of the case. Because these non-testimonial matters arise most often during extended recesses *** the court must be sensitive to allow a testifying party to confer with his or her attorney during such periods." *Id.* at 1066.

¶ 62    Although *Reynolds* is not precedential, we nevertheless find accurate its summary of the pertinent authority and agree with its conclusion. As summarized above, the trial court has broad discretion to control witness testimony, and *Perry* reflects that, even in a criminal proceeding, a defendant does not possess the right to discuss testimony with his or her counsel while that testimony is in progress. Here, the trial court instructed *both* parties that they could not discuss their testimony with counsel until they finished testifying. Critically, the record reflects that petitioner was *not* prevented all access to counsel during those breaks and that, in fact, she met with counsel the day before a hearing to discuss matters other than her testimony. Further, the court allowed petitioner time to consult with counsel about respondent's second motion to bar, which arose during a period of recess in the trial. Finally, the court explicitly explained to petitioner that its instruction "doesn't mean you can't talk to [counsel], just not about your testimony, okay?" Thus, the court did not prevent petitioner from receiving the aid of counsel when it instructed her not to discuss her testimony during recesses. In sum, petitioner's due process claim fails.

¶ 63                                    C. Maintenance

¶ 64    Finally, petitioner argues that the trial court erred in denying her maintenance, by ignoring respondent's superior income and earning potential and inflating her financial means. Petitioner points out that respondent is a full-time personal injury attorney with superior earning power and that the record reflects his income (1) in 2014, as $338,000 ($150,000 base salary and $188,000 bonus); (2) in 2015, as $457,000.95; (3) in 2016, as overall gross $1,400,000 (which included a settlement as a part of a private mediation); (4) in 2017, as $402,729.38; and (5) in 2018, as a $100,000 base salary. Petitioner argues that the court erred by accepting respondent's lowest salary as "an end point" and, further, by assuming without evidence that she could work full time and speculating that, by working full time, she could earn at least twice her current annual part-time salary of $93,000. She asserts that there was no evidence to support the court's findings and, further, that the court artificially inflated her earning potential, because her health is marginal. She notes that she underwent gall bladder removal surgery and an abdominal laparoscopy in 2016, and, indeed, the court granted her motion in 2016 to continue trial based on her poor health. She asserts that "her poor health persists." In sum, petitioner asks that we reverse the court's maintenance decision and remand for a hearing on the issue of maintenance.

¶ 65    Preliminarily, we again decline to find petitioner's argument forfeited on account of her failure to apply to it a standard of review. Petitioner's standard-of-review section provides that maintenance decisions are reviewed for an abuse of discretion, a standard with which respondent agrees. See, *e.g.*, *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 66    However, our review of this issue is hampered by petitioner's failure to include in the record the transcript from the hearing on her motion to reconsider. As noted, it is petitioner's burden to present a sufficiently complete record of the proceedings to support her arguments and,

in the absence of a complete record, we presume that the order entered by the court was in conformity with the law and had a sufficient factual basis. See *Foutch*, 99 Ill. 2d at 391-92; *Fraser*, 2014 IL App (2d) 130283, ¶ 22. When considering an incomplete record, we must resolve against the appellant any doubts that arise therefrom. *Foutch*, 99 Ill. 2d at 392.

¶ 67 Here, the trial court heard evidence over the course of 10 trial days. In its dissolution judgment, it commented on the parties' low credibility, weighed the section 504 factors, noted the absence of evidence supporting petitioner's claims of a medical condition that prevented her from working, remarked on the low weight it gave to the evidence provided by a physician who was petitioner's friend, and found that there existed conflicting evidence concerning her abilities to sit and stand, the very things she claimed she could not do. The court found that, given petitioner's failure to establish an inability to work, as well as her prior income, a maintenance award would be inappropriate. However, it reserved for 36 months her ability to petition for maintenance, should there be a change in circumstances.[6] We note that petitioner does not claim that her most recent part-time salary was *not* $93,000, or that respondent's most recent base salary was *not* $100,000; rather, she takes issue with the court's decision that, based upon those *minimum* salary figures, maintenance was unwarranted.

¶ 68 We, however, have no basis to find unreasonable the court's decision, particularly where we cannot even assume that the court's January 25, 2019, judgment, reflects its final reasoning. Specifically, because petitioner moved the court to reconsider, raising numerous challenges to the

---

[6]Accordingly, as to petitioner, the court denied maintenance, but it effectively left open a 36-month window for her to petition for it and request "reconsideration," should she experience a change in circumstances.

court's maintenance decision, including those raised on appeal, on May 13, 2019, the court not only denied petitioner's motion "for the reasons stated on the record," but it also *modified* the judgment to forever bar respondent from receiving maintenance from petitioner. It is reasonable to presume that the court again considered argument and weighed evidence that pertained to maintenance and announced on the record its findings with respect thereto. However, as there is no transcript of that hearing in the record, we do not know the basis for the court's final decision and we must presume it was in conformity with the law and supported by the facts, particularly given our abuse-of-discretion standard of review on both maintenance and the motion to reconsider. See, *e.g.*, *State Farm Mutual Automobile Insurance Co. v. Progressive Northern Insurance Co.*, 2015 IL App (1st) 140447, ¶ 69 (the decision to grant or deny a motion for reconsideration is a ruling that lies within the trial court's sound discretion).

¶ 69    We again acknowledge that we denied petitioner's motion to supplement the record with the May 13, 2019, transcript; however, we did so because we agreed with respondent's objection to the motion, namely, that her request was untimely and he had already filed a response brief heavily reliant upon an argument that petitioner's maintenance claim was subject to *Foutch*. In sum, we reject petitioner's maintenance arguments.

¶ 70                                    D. Sanctions

¶ 71    At various points in his response brief, respondent requests that, pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994), we impose upon petitioner sanctions for her "frivolous" appeal. He notes that she failed to provide a complete record; failed to link standards of review to her arguments; dedicated less than two pages in her brief to the maintenance issue, which is reviewed for an abuse of discretion; and, on that issue, provided only 10 citations to a record that exceeds 12,000 pages, some of which were to medical testimony stricken by the court.

¶ 72    Respondent's arguments about petitioner's failings are not totally without merit, but we nevertheless decline to assess sanctions. Rule 375 allows this court to impose sanctions when a party "willfully" fails to comply with appeal rules (Ill. S. Ct. R. 375(a) (eff. Feb. 1, 1994)) or where the party's appeal is (1) frivolous (*i.e.*, "not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law") or (2) not taken in good faith and for improper purpose (*i.e.*, "where the primary purpose of the appeal *** is to delay, harass, or cause needless expense") (Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994)). Simply put, while petitioner's arguments ultimately failed, we cannot say that they were frivolous, nor is it apparent that her primary purpose for appealing is to delay, harass, or cause respondent needless expense.

¶ 73                                III. CONCLUSION

¶ 74    For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 75    Affirmed.

---

### *In re Marriage of Keegan*, **2022 IL App (2d) 190495**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 14-D-565; the Hon. Robert E. Douglas, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Edward R. McCullough, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Randy K. Johnson, of West Dundee, and Barry G. Bollinger, of The Vrdolyak Law Group, LLC, of Chicago, for appellee. |

---