2023 IL App (1st) 221430

No. 1-22-1430

Opinion filed September 15, 2023

Sixth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JOSEPH BROWNING and CHRISTINE BROWNING, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 16 L 6592 |
| ADVOCATE HEALTH AND HOSPITAL CORPORATION, d/b/a Advocate Medical Group and Advocate Lutheran General Hospital, and DANIEL RESNICK, M.D., | ) ) ) ) ) ) | The Honorable John P. Kirby, Judge, presiding. |
| Defendants-Appellants. | ) ) | |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Pucinski concurred in the judgment and opinion.
Justice Lavin dissented, with opinion.

OPINION

¶ 1    About two weeks after the gallbladder surgery, Joseph Browning had most of his bowel and part of his stomach removed and a bowel transplant. Browning and his wife, Christine, sued Advocate Health and Hospital Corporation, d/b/a Advocate Medical Group and Advocate Lutheran General Hospital (Advocate), alleging that physicians at Advocate Lutheran General Hospital, including defendant Dr. Daniel Resnick, negligently failed to recognize and promptly treat Browning for a sepsis infection after removing his gallbladder. The Brownings contended

defendants' failure to perform diagnostic tests and procedures, including timely exploratory surgery, caused Browning permanent injuries and loss of a normal life and entitled his wife to damages for loss of consortium.

¶ 2    In pretrial rulings, the motion judge deemed seven physicians who treated Browning as Advocate's apparent agents, either by agreement or as a sanction for defendants' discovery violation. Later, the trial court granted the Brownings' motion *in limine* over defendants' objections, letting them read excerpts of the treating physicians' discovery depositions to the jury. The trial court found the depositions fell under the hearsay exception in Illinois Rule of Evidence 801(d)(2)(D) (eff. Oct. 15, 2015), as statements by a party's agent "concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Defendants called six of the seven physicians as witnesses in their case.

¶ 3    After a four week trial, the jury awarded the Brownings $49.25 million in damages, interest, and costs. The trial court denied defendants' motion for a new trial.

¶ 4    Defendants charge the trial court erred in (i) finding the treating physicians' discovery depositions admissible hearsay, despite having not been made during the agency relationship, which spanned the 11 days they treated Browning, and (ii) allowing excerpts of physician discovery depositions read to the jury, thereby preventing timely cross-examination.

¶ 5    We agree with defendants on the inadmissibility of the discovery depositions under Rule 801(d)(2)(D), as the physicians were not Advocate's agents when deposed. But well-established law requires the party seeking a new trial to demonstrate both prejudice and that the error affected the outcome. Defendants have failed to indicate the nature of the testimony they were prevented from eliciting that would have changed the outcome other than arguing

about the unfairness of a one week or so delay between the reading of the discovery deposition excerpts to the jury and defendants' examination of the physicians. We affirm.

¶ 6     One point regarding the dissent. The dissenter would review the sanctions order, an order that defendants did not appeal. Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017) prohibits the reviewing court from revisiting and deciding orders not before it. The rule requires the appellant to specify in the notice of appeal "the judgment or part thereof or other orders appealed from and the relief sought." *Id*.; see *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011) (notice of appeal confers jurisdiction on court of review to consider only judgments or parts of judgments specified in notice). Accordingly, we are deprived of jurisdiction to consider the sanction order.

¶ 7                                    Background

¶ 8     Joseph Browning was admitted to Advocate Lutheran General Hospital on February 10, 2015, after medical imaging scans revealed an inflamed gallbladder. Surgeon Dr. Daniel Resnick, an Advocate employee, removed Browning's gallbladder the following evening through a procedure called a laparoscopic cholecystectomy.

¶ 9     Browning began developing troubling symptoms the next day, including low blood pressure, atrial fibrillation (a faster-than-normal heart rate), and abdominal pain. He was taken to the intensive care unit for a suspected sepsis infection and placed on broad-spectrum antibiotics. While in the intensive care unit (ICU), several physicians treated Browning, including specialists in critical care, internal medicine, infectious diseases, and kidneys, and Browning's primary care physician, Dr. Mark Conley, also an Advocate employee.

¶ 10     Browning remained in the ICU for almost two weeks. His condition fluctuated. While his doctors concurred the sepsis was intra-abdominal, they disagreed on its source. Some

considered it a postoperative complication or possibly, though less likely, a kidney or urinary tract infection. Others thought the sepsis was secondary to Browning's inflamed gallbladder.

¶ 11     Browning's primary care physician, Dr. Conley, suspected the sepsis most likely represented a postoperative complication. He conferred with Dr. Resnick, recommending the surgical team reevaluate Browning. Conley also suggested imaging to rule out surgical complications. Based on Browning's medical record, the surgical team thought the abdomen was an unlikely source of the sepsis and recommended continued medical monitoring rather than surgical treatment.

¶ 12     One of Browning's ICU doctors ordered a computed tomography (CT) scan on February 13. Before the scan, Browning became unstable with shortness of breath and a rapidly fluctuating heart rate. He returned to the ICU. Doctors had to intubate him and prescribe blood pressure medications. And doctors removed fluid from Browning's abdomen that tested positive for two types of bacteria, indicating peritonitis, an inflammation of the abdominal wall.

¶ 13     On February 20, Browning underwent a CT scan. The report indicated dilation of his small bowel, more fluid, and possibly a mechanical bowel obstruction and a perforation. An infectious disease specialist thought the sepsis might be from a bowel perforation; however, the CT scan was indefinite. A critical care specialist reviewed the scan and discussed it with Dr. Resnick, who doubted the utility of further surgery because Browning seemed to be improving. On February 23, Browning again had fluid removed. Distressingly, this time the fluid contained blood and bacteria. His condition appearing to worsen, doctors ordered another abdominal CT scan. Unlike the earlier scan, this scan revealed an amount of free air, indicating a hole in the abdomen, necessitating surgery.

¶ 14 On February 24, 11 days after removing Browning's gallbladder, Dr. Resnick conducted exploratory surgery and determined that nearly all of the small bowel was ischemic (inadequate blood supply) and necrotic (refers to death of body tissue) and needed removal. Plus, Browning had a "Petersen's hernia," restricting oxygen supply to the bowel. Resnick had detected no bowel perforation during the initial or exploratory surgery.

¶ 15 Resnick performed surgical procedures in the following weeks to remove a part of Browning's stomach and most of his bowel, which had become increasingly necrotic. During one of those surgeries, Resnick located a perforation in Browning's sigmoid colon (part of large intestine attached to rectum).

¶ 16 Nearly two months later, Browning underwent a bowel transplant at a hospital unaffiliated with Advocate.

¶ 17          Procedural History

¶ 18 In 2016, the Brownings filed a six-count complaint alleging medical negligence and derivative loss of consortium claims against Advocate, Dr. Resnick, and another physician. The complaint alleged, in part, that based on Browning's pain level and abnormal lab test results, defendants knew or should have known he had an intra-abdominal infection as a postoperative complication and (i) timely obtained or recommended a CT scan or abdominal X-ray, (ii) consulted with a gastroenterologist, or (iii) performed exploratory surgery on his abdomen. According to the Brownings, defendants violated the standard of care by waiting 11 days before the exploratory surgery when his bowel had been damaged beyond repair.

¶ 19 Defendants contend that their care, management, and treatment was reasonable, appropriate, and within the standard of care and the damage to Browning's bowel and stomach

and the resulting bowel transplant stemmed from gastric bypass surgery Browning went through in 2013, not the gallbladder removal procedure or his follow-up treatment.

¶ 20    The Brownings' amended complaint added treating physicians and their respective employers as named defendants. The amended complaint alleged those physicians acted as Advocate Lutheran General Hospital's agents or apparent agents when treating Browning. Advocate admitted that Drs. Resnick and Conley were employees but asserted that the other treating physicians were independent contractors.

¶ 21    Between January 2018 and March 2019, the physicians who treated Browning in February 2015 sat for discovery depositions. Afterward, Advocate filed an amended answer admitting that four treating physicians were apparent agents but insisted the remaining physicians were not. Later, Browning dismissed the individually named physicians except Resnick.

¶ 22                                Discovery Sanction

¶ 23    In December 2018, the Brownings issued a deposition rider to defendants. The rider sought to depose individuals knowledgeable about the relationship between Advocate and Advocate Physician Partners (APP), a managed care organization, to determine whether APP exercised control over treatment decisions at Advocate Lutheran General Hospital. The Brownings also sought documents related to that relationship. Advocate refused to comply, contending that APP made no treatment decisions and was an independent company handling the administrative aspects of physicians' practices, including billing, compliance paperwork, and negotiating with insurers. Advocate moved to strike the rider as irrelevant.

¶ 24    In September 2019, the motion judge ordered Advocate to respond to the deposition rider. When Advocate refused, claiming it had no control over the documents, Browning moved for

discovery sanctions under Illinois Supreme Court Rule 219 (eff. July 1, 2002). After multiple continuations, the Brownings filed an amended sanctions motion.

¶ 25 Meanwhile, the Brownings filed a third amended complaint in June 2020, adding allegations that certain treating physicians and Advocate belonged to APP. And the Brownings moved for partial summary judgment, seeking a ruling that certain treating physicians were Advocate's apparent agents. The judge denied that motion, finding a genuine issue of material fact on whether Browning knew or should have known the physicians were not Advocate's employees or agents, especially given the consent forms he signed acknowledging the independent contractor status of most of his treaters.

¶ 26 After a hearing, the motion judge granted Rule 219 sanctions, finding that even if separate corporations, a legal partnership existed between Advocate and APP, and Advocate had control of APP's documents. As the sanction, the judge "debarred" Advocate from "maintaining any defense or argument to plaintiffs' claim concerning the apparent agency of the non-employee doctors as alleged in the plaintiff's Third Amended Complaint." The Brownings renewed their partial summary judgment motion for a finding that the treating physicians were Advocate's apparent agents, which the trial court granted on account of the sanction order. (Defendants reiterated at oral argument that they have not appealed the sanction order's validity or the grant of partial summary judgment.)

¶ 27 Pretrial Motions *in Limine*

¶ 28 Before trial, the Brownings filed motions *in limine* to have portions of the discovery deposition of ten of Browning's treating physicians read to the jury. Advocate did not object to using the discovery depositions of three of the physicians, whom it acknowledged as its employees or agents. But Advocate filed a reciprocal motion *in limine* objecting to the use of

discovery depositions of seven physicians, asserting that they constituted inadmissible hearsay. Advocate acknowledged that an out-of-court statement of a party opponent is admissible if made "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Ill. R. Evid. 801(d)(2)(D) (eff. Oct. 15, 2015). Nonetheless, Advocate argued that when the physicians gave their discovery depositions, the trial court had not deemed them to be Advocate's agents. Moreover, they asserted the agency relationship existed only when the physicians treated Browning and ceased by the time of the depositions years later. Thus, the depositions did not constitute statements of an agent "made during the existence of the relationship."

¶ 29    After a hearing, the trial judge granted the Brownings' motion *in limine* to present the discovery depositions of the treating physicians as substantive evidence in place of trial testimony and denied Advocate's reciprocal motion.

¶ 30                                Trial

¶ 31    Defendants do not contest the sufficiency of the evidence. Instead, they argue that the reading of discovery deposition excerpts constituted impermissible hearsay and prevented timely cross-examining of the physicians.

¶ 32    Before trial, the court overruled defendants renewed objection to allowing the Brownings to use the treating physicians' discovery depositions as substantive evidence. In their case-in-chief, the Brownings presented testimony from 12 liability witnesses, including 8 treating physicians whose discovery depositions were read. (Seven were physicians defendants contended were not Advocate's agents or apparent agents.) The trial judge instructed the jurors that the "testimony [was] previously taken under oath at a prior deposition.·You are to treat that testimony as if the doctor was here." A reader presented the excerpts.

¶ 33    The Brownings also presented the video depositions of Dr. Resnick, one of his surgical residents, and two expert witnesses regarding the standard of care. Witnesses in court included friends and coworkers of Browning, who testified about his quality of life, and a psychiatrist, who testified about life expectancy and medical needs, among other matters. Browning and his wife testified, too.

¶ 34    Defendants began their case-in-chief about a week later. They called five expert witnesses to testify that the treating physicians complied with the standard of care. Defendants also called as witnesses in their defense six of the seven treating physicians whose discovery deposition had been read and whom defendants claimed were not Advocate's agents or apparent agents.

¶ 35    After closing arguments, the jury returned a verdict against defendants for $49.25 million. Defendants moved for a new trial or, alternatively, a reduction in damages. Defendants argued that (i) the trial court abused its discretion by imposing the discovery sanction, (ii) the use of the sanction to retroactively convert inadmissible discovery deposition testimony into admissible prior testimony of party agents deprived them of a fair trial, and (iii) Advocate Lutheran General Hospital should recover certain paid medical costs under section 2-1205 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1205 (West 2020)).

¶ 36    The trial court, after finding the sanctions order appropriate, rejected defendants' argument that admission of the discovery depositions as substantive evidence amounted to error. As to those physicians acknowledged as agents, the trial court stated that Advocate's argument lacked logic.

"[Defendants are] saying *** that a party can come in and agree that we're apparent agents, accept a summary judgment to that fact; but then when they get to trial, say, well we

admitted in summary judgment, but we're not apparent agents at this time, at the time of treatment, at the time of deposition, or at the time of trial."

¶ 37    On the defense argument that sanctions could not be imposed retroactively to convert nonparty treaters into party opponents, the court again considered it illogical that a sanction could later be construed as having no effect.

¶ 38    Regarding the three physicians deemed apparent agents as a discovery sanction, the court regarded it beyond dispute that at the time of their depositions, "they were not apparent agents." But that changed following the rulings on sanctions and partial summary judgment. "To go back now and say that the depositions of these individuals *** are improper, I don't believe has any legal basis. I also don't believe it has any logical consistency in regards to what the effect of a court ruling is."

¶ 39    In response to defendants' argument on the reading of the discovery depositions to the jury, the court said, "plaintiff is not obliged to follow defendant's theory of how the case should proceed. They have the right to proceed the way they wish as long as the court finds its proper."

¶ 40    The parties jointly stipulated to reduce the damages by $2 million under section 2-1205 of the Code. *Id.* The trial court entered a final judgment after granting the Brownings' motion to modify the judgment to include prejudgment interest.

¶ 41                                  Analysis

¶ 42    Before turning to the merits, we address the Brownings' contention that Dr. Resnick does not have standing to appeal the hearsay issue. Specifically, the Brownings assert Advocate and Resnick do not have the same rights and should be treated separately. We disagree.

¶ 43    The Brownings' complaint sought to hold Resnick liable for his negligence and Advocate derivatively liable for the negligence of the treating physicians, including Resnick and others.

The Brownings offered the treating physicians' discovery depositions to prove that Resnick and his employer, Advocate, acted negligently. So, Resnick had an interest in admitting that evidence and may challenge the rulings.

¶ 44 The Brownings also argue Resnick and Advocate forfeited issues concerning the Illinois Rule of Evidence 801(d)(2)(D) (eff. Oct. 15, 2015) statements by not objecting at trial. The record says otherwise.

¶ 45 Defendants' attorney, who represented Advocate and Resnick, filed a motion *in limine* objecting to using the discovery depositions. More tellingly, Advocate and Resnick together filed the posttrial motion for a new trial, claiming prejudice from the improper admission and asking for a new trial. Thus, defendants preserved the issue for appeal. See *Gaffney v. City of Chicago*, 302 Ill. App. 3d 41, 58-59 (1998) (issues "explicitly argued" in posttrial motion not forfeited).

¶ 46                                         Standard of Review

¶ 47 Turning to the merits, the parties disagree on the appropriate standard of review. Browning contends that a trial judge has discretion in granting a motion *in limine*, admitting evidence, and granting a new trial, and we should not reverse absent an abuse of discretion. Defendants argue we review the issues *de novo*.

¶ 48 A trial court's decision to admit or exclude evidence usually involves a matter within the court's discretion and will be overturned only for an abuse of that discretion. *Ittersagen v. Advocate Health & Hospitals Corp.*, 2020 IL App (1st) 190778, ¶ 75. But when that decision depends entirely on an interpretation of law, our review involves a question of law and the *de novo* standard applies. *Bland v. Q-West, Inc.*, 2023 IL App (2d) 210683, ¶ 22.

¶ 49    The trial court's ruling on the motion *in limine* and decision to admit the treating physician's discovery depositions turned on interpreting Rule 801(d)(2)(D), as did the finding the physicians were Advocate's agents or apparent agents when treating Browning and giving their depositions. On top of that, for a new trial based on the evidentiary rulings, the law requires finding the error caused substantial prejudice and affected the outcome. *Simmons v. Garces*, 198 Ill. 2d 541, 566-67 (2002). The party seeking reversal bears the burden of demonstrating prejudice. *Ramirez v. FCL Builders, Inc.*, 2014 IL App (1st) 123663, ¶ 198. Our review is *de novo*.

¶ 50                           Admission of Discovery Depositions

¶ 51    Defendants contend the trial court erred by admitting the discovery deposition testimony of seven physicians who treated Browning in the ICU as substance evidence under Illinois Supreme Court Rule 212 (eff. Oct. 1, 2020) and Illinois Rule of Evidence 801(d)(2) (eff. Oct. 15, 2015).

¶ 52    Hearsay, an out-of-court statement offered for the truth of the matter asserted, is inadmissible unless it falls within a recognized exception. *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1064 (2001). Depositions, as out of court statements, constitute hearsay. *In re Marriage of Daebel*, 404 Ill. App. 3d 473, 492 (2010). Moreover, unlike evidentiary depositions to which the Illinois Rules of Evidence apply, discovery depositions generally are not admissible at a trial even when the deponent is unavailable because it would inhibit free discovery by requiring evidentiary objections at discovery depositions. See *In re Estate of Rennick*, 181 Ill. 2d 395, 403 (1998). Yet, Illinois Supreme Court Rule 212(a) (eff. Oct. 1, 2020) provides five circumstances in which a discovery deposition may be used, including "as a former statement, pursuant to Illinois Rule of Evidence 801(d)(2)." Illinois Rule of Evidence

801(d)(2)(D) (eff. Oct. 15, 20215) provides that a statement is not hearsay if "The statement is offered against a party and is *** a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."

¶ 53    All agree that Browning's treating physicians were Advocate's agents or apparent agents when treating him, and Advocate could be held vicariously liable for their negligence. Defendants contend, however, that the agency relationship existed at the time they cared for Browning, which ended in February 2015, long before the physicians sat for the discovery depositions in 2018 and 2019. That being so, defendants assert that the treating physicians were not Advocate's apparent agents as contemplated by Rule 801(d)(2)(D) ("during the existence of the [agency] relationship" (Ill. R. Evid. 801(d)(2)(D) (eff. Oct. 15, 2015)), and so inadmissible under Illinois Supreme Court Rule 212(a)(2) (eff. Oct. 1, 2020). See *Taylor v. Kohli*, 162 Ill. 2d 91, 95-96 (1994) (expert witness is not *per se* agent of person who hired them, and expert's discovery deposition testimony is not admissible as statement against interest).

¶ 54    Defendants additionally contend that by allowing the discovery depositions as evidence, the trial court blurred the distinction between evidence depositions, which preserve evidence for trial and are restricted by the Illinois Rules of Evidence, and discovery depositions, which allow parties to explore the facts with little regard for scope and manner of questioning. See *Slatten v. City of Chicago*, 12 Ill. App. 3d 808, 813 (1973). " 'Knowing in advance that a deposition is for discovery only and hence of limited admissibility, counsel ordinarily do not urge technical objections, and the taking of the deposition proceeds informally and

expeditiously.' " *Id*. (quoting Edward W. Cleary, Handbook of Illinois Evidence § 1.5, at 8 (2d ed. 1963)).

¶ 55    We find that the trial judge misconstrued the sanctions order.

¶ 56    As noted, the sanctions order applied to allegations in the plaintiff's third amended complaint about the nonemployee physicians' conduct in 2015. The third amended complaint makes no allegations about conduct *after* 2015 or references the discovery depositions. As such, the motion judge confined the order to the treating physicians' conduct in 2015 while they treated Browning. Consequently, the deposition testimony more than three years later could not have been made "during the existence of the [agency] relationship" and falls outside the hearsay exception in Rule 801(d)(2)(D).

¶ 57    Regarding the sanctions order, the dissent acknowledges that neither party contests its validity. Nonetheless, the dissent concludes this court has jurisdiction to review it. An order not specified in a notice of appeal is reviewable if it is a step in the procedural progression leading to the judgment specified in the notice of appeal. *McGath v. Price*, 342 Ill. App. 3d 19, 33 (2003). The motion judge's sanctions order, based on defendants' discovery violations, was not a step in the procedural progression leading to the judgment against defendants. Indeed, it was the trial court misconstruing that order, not the sanctions order itself, that resulted in granting the Brownings' pretrial motions *in limine*. Moreover, as discussed below, absent a showing of prejudice, an error by the motion judge in sanctioning defendants would not be grounds for reversal. The court would be overstepping its authority by exercising jurisdiction.

¶ 58    The Brownings argue for admissibility (i) under Illinois Rule of Evidence 801(d)(2)(C) (eff. Oct. 15, 2015), which applies to statements offered against a party made by a person authorized by the party to make a statement concerning the subject, and (ii) under Illinois Rule

of Evidence 801(d)(2)(F) (eff. Oct. 15, 2015), which applies to statements offered against a party made by a person, or a person on behalf of an entity, in privity with the party or jointly interested with the party.

¶ 59 Although the trial court did not address the admissibility under Rule 801(d)(2)(C) or (F), we may affirm the underlying judgment on an alternative basis "supported by the record." *Gardziella v. City of Chicago*, 337 Ill. App. 3d 181 185, (2003). The record does not support admitting the discovery depositions under either provision.

¶ 60 As to Rule 801(d)(2)(C), the Brownings assert that because the treating physicians had the authority to write in patients' charts and communicate about patients' treatment and care, they had the authority to speak on behalf of Advocate. Not so. Significantly, the Brownings cite no cases to support that argument. Further, documenting a patient's treatment does not convey the authority to speak on behalf of the hospital when making statements in discovery depositions about that treatment. The Brownings presented no evidence showing Advocate gave the treating physicians authority to speak on its behalf.

¶ 61 As to Rule 801(d)(2)(F), the Brownings contend the treating physicians were in privity with defendants as Advocate's apparent agents, primarily relying on *McIntyre v. Balagani*, 2019 IL App (3d) 140543. That opinion, however, has been withdrawn, and the order replacing the opinion does not mention privity. See *McIntyre v. Balagani*, 2020 IL App (3d) 140543-U. The other two cases cited, *McNamee v. Sandore*, 373 Ill. App. 3d 636 (2007), and *Neuberg, v. Michael Reese Hospital & Medical Center*, 118 Ill. App. 3d 93 (1983), address privity to apply *res judicata* and fail to support the Brownings' argument. The Brownings also contend the treating physicians were in privity with defendants as they were named codefendants in the

lawsuit when deposed. Again, the Brownings cite no supporting caselaw finding that status as a codefendant puts the party in privity as to statements made on the other parties' behalf.

¶ 62     We agree with defendants that the trial court erred in finding certain discovery depositions admissible at the trial.

¶ 63                     Substantial Prejudice Affecting the Outcome

¶ 64     That said, reversal requires finding that the error caused substantial prejudice and affected the outcome of the trial. *Simmons*, 198 Ill. 2d at 566-67. The party seeking a new trial carries the burden of establishing (i) prejudice and (ii) that the error affected the outcome. See *Dienstag v. Margolies*, 396 Ill. App. 3d 25, 40 (2009) (citing *Jackson v. Pellerano*, 210 Ill. App. 3d 464, 471 (1991)). Defendants have not satisfied either burden.

¶ 65     Defendants claim they were prejudiced by the reading of excerpts of the discovery depositions, which deprived them of the fundamental right to cross-examine *immediately*. As to the outcome, defendants' briefs are silent about why the result would have been different had the trial judge not allowed the reading of the discovery depositions.

¶ 66     As defendants point out, numerous courts and treatises have addressed the role and importance of cross-examination in a trial. *E.g.*, *Pointer v. Texas*, 380 U.S. 400, 405 (1965) ("few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal"). Even so, few cases address the timing of cross-examination. To support their prejudice argument, defendants rely on a 110-year-old decision from the Wisconsin Supreme Court and a 55-year-old decision involving the Federal Trade Commission from the Fifth Circuit Court of Appeals, neither of which helps them.

¶ 67        In *Adams v. Bucyrus Co.*, 143 N.W. 1027 (Wis. 1913), the plaintiff sued his employer for injuries incurred in a workplace accident. At trial, the plaintiff called several defendant employees as adverse witnesses, including eyewitnesses. The trial court ruled that the defendant could not cross-examine the employees, relying on a Wisconsin Supreme Court case. *Id.* at 1029. Then, when the defendant called the eyewitness in its case, the trial court prevented the defendant from asking about written statements the eyewitness had made that conflicted with his trial testimony under the general rule that a party cannot impeach their witness. *Id*. at 1030.

¶ 68        The Wisconsin Supreme Court reversed and remanded for a new trial. *Id.* at 1032. The court found the trial court erred in preventing cross-examination because of defendant's right to re-examine an adverse witness

> "immediately after the close of the plaintiff's examination as to all matters tending to explain or qualify the testimony already given, but not as to defensive matters not brought out by plaintiff's counsel, and may ask the witness questions proper for the purpose of impeachment, upon stating that he does not intend thereafter to make the witness his own."
> *Id.* at 1029-30 (citing *Guse v. Power & Mining Machinery Co.*, 139 N.W. 195 (1912)).

¶ 69        Further, the court found that the trial court's two rulings excluded the statements completely despite the defendant's right to have the jury consider them as impeaching the eyewitness's credibility, and the defendant tried "to get them in." *Id*. at 1030. The court noted that because that employee was the only witness to the accident, defendant's rights were substantially prejudiced because, had the witness's statements been placed before the jury after the direct testimony, "it can hardly be doubted that the result of the case might very probably have been different." *Id*. at 1030-31.

¶ 70    Notably, *Adams* has been cited in just eight cases, most recently 90 years ago, none of which assist defendants' argument regarding cross-examination. Besides, *Adams* is easily distinguishable. Defendants here did not demonstrate that they were prevented from eliciting from the treating physicians' testimony likely to have changed the outcome. As we noted, defendants called the treating physicians as witnesses in their case. They were not precluded from cross-examining them. As Illinois Rule of Evidence 806 (eff. Jan. 1, 2011) provides, "[i]f the party against whom a hearsay statement [or a statement defined in Rule 801(d)(2)(C), (D), (E), or (F),] has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination."

¶ 71    Defendants focus on the specific, isolated phrase in *Adams* that a defendant has a right to re-examine an adverse witness "immediately after the close of the plaintiff's examination." Still, the court also said the defendant "may ask the witness questions proper for the purpose of impeachment, upon stating that he does not intend thereafter to make the witness his own." Defendants opted to call the treating physicians as witnesses in their defense. Defendants could have asked to call them as adverse witnesses to impeach the excerpts from their discovery depositions. Defendants opted not to and cannot now claim their trial strategy constituted prejudice. See *In re Marriage of Pylawka*, 277 Ill. App. 3d 728, 734 (1996) (party who had opportunity and failed to cross-examine witness cannot later claim prejudice).

¶ 72    In the other case, *Pacific Molasses Co. v. Federal Trade Comm'n*, 356 F.2d 386, 389 (5th Cir. 1966), the Federal Trade Commission violated a pretrial order requiring disclosure of the names of witnesses 15 days before trial to allow the defense to prepare for cross-examination. The defendant received a partial list of witnesses four days before trial and learned the names of additional witnesses on the first day of trial. *Id.* The court disagreed with the hearing

officer's finding that defendant was not prejudiced by violating the pretrial order, noting that "[e]ffective cross-examination requires thorough preparation by counsel before trial." *Id*. at 390. The court further found that a 40-day continuance to prepare for further cross-examination did not cure the prejudice because "[t]he efficacy of cross-examination is in many ways directly related to its immediacy following direct testimony. The longer the delay between the two, the greater the risk that cross-examination will be unable to place the direct testimony in its proper perspective." *Id*.

¶ 73    Defendants contend that, as in *Pacific Molasses*, the delay between the reading of the physicians' discovery depositions to the jury and defendants calling those physicians as witnesses in their case-in-chief brought about prejudice. Like *Adams*, *Pacific Molasses* rarely has been cited on the issue of cross-examination. And, unlike in *Pacific Molasses*, defendants knew the names of the witnesses the Brownings intended to call and do not contend they were deprived of an opportunity to prepare them.

¶ 74    According to defendants, their prejudice stems from waiting about a week to present the six physicians rather than *immediately* cross-examine. When defendants put the six physicians on the stand, they could have asked to treat them adversely and attempted to impeach statements from their deposition testimony. Ill. R. Evid. 806 (eff. Jan. 1, 2011). Further, the order of proof lies mainly in the court's discretion, and parties cannot complain of an abuse of discretion so long as they can introduce their evidence. *Laird v. Illinois Central Gulf R.R. Co.*, 208 Ill. App. 3d 51, 78 (1991) (citing Robert S. Hunter, Trial Handbook for Illinois Lawyers, § 14.3, at 163 (6th ed. 1989)). Defendants were not denied an opportunity to present their evidence.

¶ 75        Most significantly, other than asserting unfair timing, defendants fail to identify the nature of the testimony they were prevented from eliciting that would have changed the outcome. The dissent asserts the prejudice was "inherent" and an erroneous evidentiary ruling alone demonstrates prejudice "because the jury was never supposed to hear that evidence." *Infra* ¶¶ 90, 93. Not at all. The testimony still would have been elicited, just not read. The dissenter adds, "it is more than reasonable to conclude that the improper evidence affected the outcome of the trial." *Infra* ¶ 90. "[M]ore than reasonable to conclude"? That's the dissenter's own subjective and unsupported belief. And "improper evidence"? No. Rather, proper evidence was presented in an improper manner, nothing more.

¶ 76        As noted, the dissent addressed the merits of the sanctions order, despite defendants not appealing that order and contrary to the limits on our jurisdiction imposed by Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017); see also *General Motors Corp.*, 242 Ill. 2d at 176 (notice of appeal confers jurisdiction on court of review to consider only judgments or parts of judgments specified in notice). The dissent relies on *In re Estate of Zagaria*, 2013 IL App (1st) 122879, ¶ 48, to shove Rule 303(b)(2) aside and delve into inappropriate *ad hoc* decision-making. Neither *Zagaria* nor the case it relies on, *In re Marriage of O'Brien*, 2011 IL 109039, supports the dissent's overreaching.

¶ 77        In *Zagaria*, an estate owner, who had disappeared and was presumed dead, reappeared and sought to reclaim the estate's assets from his sister. Attorneys representing the estate in the owner's absence petitioned for attorney's fees. *Zagaria*, 2013 IL App (1st) 122879, ¶ 1. The estate owner opposed the petition and sought to surcharge the attorneys, alleging the attorneys breached fiduciary duties they owed the estate. *Id.* ¶ 9. The trial court denied the surcharge request, which the estate owner did not appeal. *Id.* After the trial court revested the estate owner

with the assets, it entered a judgment against the estate for attorney's fees. *Id.* ¶ 10. The estate owner appealed, arguing that if the appellate court affirms reinvesting him with the assets, it should reverse the judgment that the attorneys did not owe him a fiduciary duty. *Id.* ¶ 12.

¶ 78    The *Zagaria* court, quoting *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23, said " 'notices of appeal [can] confer jurisdiction even if the order was not expressly mentioned in the notice of appeal, if that order was a step in the procedural progression leading to the judgment which was specified in the notice of appeal.' " *Zagaria*, 2013 IL App (1st) 122879, ¶ 48. The *Zagaria* court also stated "[i]f the order specified in the notice of appeal directly relates back to the judgment or order sought to be reviewed, then the notice of appeal is sufficient to confer jurisdiction under this rule." *Id.* (citing *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 434-35 (1979)). The court found that the order finding that the attorneys did not owe the estate owner a fiduciary duty was not properly before the court because that judgment was not a preliminary determination necessary to the judgment against the estate or to recovering funds for the estate. *Id*. ¶ 49.

¶ 79    Similarly, the judgment in plaintiffs' notice of appeal does not "directly relate" back to the motion judge's sanctions order, given the trial court's intervening order granting plaintiff's motion *in limine*, which, as we agree, was entered in error. Moreover, the order imposing discovery sanctions did not amount to a preliminary determination necessary to the judgment. As we have explained, even without sanctions, the physician's testimony would have been admitted into evidence in a different manner.

¶ 80    Further, *In re Marriage of O'Brien*, 2011 IL 109039, relied on by *Zagaria*, is easily distinguished. In *O'Brien*, our supreme court found that the appellant's notice of appeal sufficiently indicated he was appealing from the denial of his petition seeking for-cause

substitution of judge, where his notice of appeal stated he was taking an appeal from the judgment entered and " 'all prior orders of court culminating therein.' " *Id.* ¶ 23. Moreover, an order denying a petition for substitution, which our supreme court considered a step in the procedural progression leading to the final judgment, plainly differs from an order imposing discovery sanctions. *O'Brien* does not permit this court to review all orders that precede the judgment appealed from, only those that "directly relate" back, which excludes the sanctions order.

¶ 81    The dissent also suggests we are attempting "an end run around the inherent prejudice" by concluding defendants have not shown prejudice or that the verdict would have been different had the jury not been presented with that evidence. *Infra* ¶ 93. The dissent cites two cases to support its fanciful "inherent" prejudice theory: *Southern Illinois Airport Authority v. Smith*, 267 Ill. App. 3d 201 (1994), and *DiCosolo v. Janssen Pharmaceuticals, Inc.*, 2011 IL App (1st) 093562. Actually, both cases support the majority's result, reiterating the binding precedent that governs this case. See *Southern Illinois*, 267 Ill. App. 3d at 209-10 (" '[n]ew trials can be ordered only when the evidence improperly admitted appears to have affected the outcome' " (quoting *J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.*, 108 Ill. 2d 106, 115 (1985)); *DiCosolo*, 2011 IL App (1st) 093562, ¶ 40 ("burden of establishing prejudice and showing that the trial court's error affected the outcome of the trial is on the party seeking reversal"). And both cases do not reference, let alone say, a single word about an "inherent" prejudice theory.

¶ 82    Next, the dissent accuses the majority of not comprehending the difference between discovery and evidence depositions, which it deems a "most salient point." *Infra* ¶ 100. On the contrary, we understand the distinction and ruled in defendant's favor on the issue. But, that

ruling only goes to whether the trial court erred in admitting the statements into evidence. What the dissent casts aside is settled law that the party seeking a new trial has the burden of showing the error caused prejudice and affected the outcome.

¶ 83        Next, the dissent, like the defendants, points to an inadequate opportunity to prepare the physicians for their discovery depositions under the rule in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 588 (1986). In *Petrillo*, a lawsuit about defective infant formula, defense counsel was held in contempt for intentionally circumventing conventional methods of discovery outlined in Illinois Supreme Court Rule 201 (eff. July 1, 1982), including oral depositions, written interrogatories, and document requests, and instead pursuing private, *ex parte* conferences with the plaintiff's treating physicians. *Petrillo*, 148 Ill. App. 3d at 584. *Petrillo* does not prohibit all communications with treating physicians. Moreover, other than asserting "inherent prejudice" (*infra* ¶ 93), the dissent fails to explain how limits on *ex parte* communications with Brownings' physicians changed the outcome of this trial, where defendants called those physicians as witnesses.

¶ 84        The dissent implies that having an actor read a deposition at trial is unusual. The Illinois Rules of Evidence and the Illinois Rules of Professional Conduct of 2010 do not prohibit it, and the practice has been around for years. Even if we to assume prejudice, neither the defendants nor the dissent explain how that would have affected the outcome.

¶ 85        Lastly, the dissent misstates the time between the deposition testimony and the live witnesses being as much as "three weeks later" (*infra* ¶ 97). Incorrect. Plaintiffs opened their case on February 15, 2022, and the bulk of the deposition testimony was presented between February 22 to 24. The defense began their case on March 2, less than a week later. The dissent notes that COVID-19 related issues with jurors delayed the case a week. *Infra* ¶ 97. Delays in

trials happen for many reasons, including witness unavailability, illness, and, in recent years, a pandemic. Courts generally have found a delay prejudicial when material witnesses become unavailable to testify. Compare *Bultas v. Board of Fire & Police Commissioners of Berwyn*, 171 Ill. App. 3d 189, 195 (1988) (plaintiff was not prejudiced by filing delay absent evidence material witnesses were unavailable to testify), with *Mank v. Board of Fire & Police Commissioners*, 7 Ill. App. 3d 478, 485 (1972) (delay prejudiced plaintiff when several witnesses were unavailable to testify). The defendants do not contend they could not call material witnesses in their case. Ultimately, the law requires defendants to show that an evidentiary error caused prejudice and affected the outcome. The defendants did neither.

¶ 86        Affirmed.

¶ 87        PRESIDING JUSTICE LAVIN, dissenting:

¶ 88        I agree with the majority that Dr. Resnick has standing to appeal the hearsay issue, that *de novo* review applies to the trial court's decision to admit the treating physicians' discovery depositions at trial, and that the trial court erred in admitting those depositions. But I cannot agree with the majority's unsupportable conclusion that defendants were not prejudiced by the improper admissions and the profoundly unfair manner in which they were presented to the jury. Therefore, I must respectfully dissent.

¶ 89        Initially, the majority has correctly observed there was no proper basis to admit the treating physicians' discovery depositions as substantive evidence at trial under either Illinois Supreme Court Rule 212 (eff. Oct. 1, 2020) or Illinois Rule of Evidence 801 (eff. Oct. 15, 2015) because the physicians were not Advocate's agents at the time they were deposed, a fact even the trial court conceded. Below, the trial court agreed with defendants that the motion judge's "statements concerning legal partnership were wrong" and that "[t]he creation of a legal partnership based on

the bylaw and the representations made at the hearing was incorrect as a matter of law." Yet, the trial court still admitted the treating physicians' discovery depositions as substantive evidence at trial, thereby allowing plaintiffs to unfairly benefit from the pretrial sanctions order. That testimony should never have been considered by the jury because the physicians were independent contractors when their depositions were taken.

¶ 90 This court cannot countenance such an outright deviation from the Illinois Supreme Court rules, especially when it puts the parties on the other side of the proverbial "v" at an obvious disadvantage. Here, the trial court's ruling admitting the treating physicians' discovery depositions based on the harmful pretrial sanctions order, as will be discussed below, clearly violated Rule 212, which is in and of itself prejudicial, because the jury was never supposed to hear that evidence. Defendants are thus entitled to a new trial as a matter of law. See *DiCosolo v. Janssen Pharmaceuticals, Inc.*, 2011 IL App (1st) 093562, ¶ 40 (noting that parties are entitled to a new trial if the "trial court's erroneous evidentiary ruling was substantially prejudicial and affected the outcome of the trial"). Because the jury in this case was not supposed to hear the evidence presented to it through eight discovery depositions, it is more than reasonable to conclude that the improper evidence affected the outcome of the trial.

¶ 91 The majority here agrees that "the trial court erred in finding certain discovery depositions admissible" (*supra* ¶ 62), yet still concludes this insufficient to establish prejudice warranting reversal. I cannot agree as the evidence does not support that conclusion. Moreover, although the majority has not reviewed the pretrial sanctions order since neither party contests it, the primary issues before us stem from that order and the order was clearly a step in the procedural progression leading to the judgment specified in defendants' notice of appeal. Because the issues on appeal surrounding that judgment predominantly concern that order, I find we have jurisdiction to review

the order even though it was not expressly mentioned in defendants' notice of appeal. See *In re Estate of Zagaria*, 2013 IL App (1st) 122879, ¶ 48 ("Our supreme court has also found notices of appeal to confer jurisdiction even if the order was not expressly mentioned in the notice of appeal, if that order was a step in the procedural progression leading to the judgment which was specified in the notice of appeal." (Internal quotation marks omitted.)).

¶ 92    That being said, I believe the motion judge erred in issuing sanctions against defendants based on his finding that a legal partnership existed between Advocate and APP. Contrary to what plaintiffs now assert on appeal, there was no contract between Advocate and APP. Rather, there was single sentence in APP's bylaws stating that one of its purposes was to have "an innovative and collaborative partnership with physicians and the Advocate Health Care system," and neither entity signed that document. Plaintiffs' counsel before the motion judge correctly referred to the document as the "Corporate Bylaws of Advocate Health Partners." This is not the same thing as a contract between the two entities, and the motion judge's sanctions based on that single sentence was harmful and erroneous. The motion judge even acknowledged that sole sentence in APP's bylaws was "the reed on which [he was] hanging" his finding that Advocate and APP had a legal partnership. To call that a slender reed is an understatement, and the effect of the harmful, resulting sanctions order altered the course of what happened at trial in manner that served to only benefit plaintiffs, and unfairly prejudice defendants.

¶ 93    The majority has attempted an end run around the inherent prejudice in the trial court's erroneous evidentiary rulings by concluding that defendants have not shown they were prejudiced by the unlawful Rule 212 admissions or that the verdict would have been different had the jury not been presented with that evidence. The record does not support that conclusion, however.

¶ 94        First, the treating physicians' discovery depositions consisted of independent recollections and complicated facts and procedures that occurred years before they were deposed. As a result, defendants were not able to adequately prepare the physicians concerning their proffered testimony like they would normally do prior to trial due to the *Petrillo* rule. See, *e.g.*, *McChristian v. Brink*, 2016 IL App (1st) 152674, ¶ 19 ("The appellate court in *Petrillo* found that *ex parte* communications between a plaintiff's treating doctor and defense counsel are barred as a matter of public policy, for they compromise the 'sanctity' of the doctor-patient relationship."). To that end, only Drs. Citronberg and Stone were represented by counsel at their discovery depositions. Drs. Conley, McShane, Harnisch, Bhaven Shah, Odeh, and Klein were unrepresented at their respective discovery depositions. This meant that those witnesses gave statements without any oversight by counsel that were then later used at trial as substantive evidence against the defense. The majority's conclusion that this was not sufficient evidence of prejudice is disingenuous at best.

¶ 95        Simply put, if the trial court's decision to allow these discovery depositions to be effectively converted into evidence depositions is permitted, the Illinois Supreme Court rules differentiating the two would be quintessentially vitiated. This is contrary to every sentence in each of the Illinois Supreme Court rules that define the difference between discovery deposition testimony and that obtained at trial or in an evidence deposition. See *Longstreet v. Cottrell, Inc.*, 374 Ill. App. 3d 549, 555-56 (2007) (noting that under Illinois law, there is a distinct difference between procedural law concerning discovery and evidence deposition admissions, and that even "[w]ith various amendments over the past 50 years, the supreme court has kept the difference between discovery and evidence depositions intact"); *Slatten v. City of Chicago*, 12 Ill. App. 3d 808, 813 (1973) (noting that the difference between discovery and evidence depositions is " 'significant' " because the admissibility in evidence of discovery depositions is " 'limited,' "

whereas evidence depositions " 'are admissible as fully as would be the testimony of the deponent if present in person at the trial' ").

¶ 96    Second, although defendants were able to call the treating physicians to testify at trial, this did not occur until several weeks after plaintiffs were given the opportunity to cherry pick select portions of the medical records and the physicians' discovery depositions to read to the jury. As previously set forth, plaintiffs presented 12 liability witnesses at trial. Of those 12 witnesses presented by plaintiffs, defendants were only given the opportunity to cross-examine 4 of them during plaintiffs' case-in-chief. Furthermore, plaintiffs hired Glenn Rabinak, a retired chemical engineer, as a paid "actor" to read into evidence eight treating physicians' discovery depositions (Drs. Stone, Conley, Citronberg, McShane, Harnisch, Bhaven Shah, Odeh, and Klein), rather than call those witnesses live, even though they were all available to testify in court.[1] The depositions, which were taken years earlier, out-of-order and context, never should have been read to the jury. And once the trial court allowed these medical records and depositions to be read into evidence, defendants were not given an opportunity to call the witnesses to testify at trial until several weeks later.

¶ 97    For example, Rabinak read Dr. Stone's discovery deposition statements to the jury the day the trial began, on February 15, 2022. The defense did not get to call Dr. Stone to challenge those deposition statements until 2½ weeks later, on March 4, 2022. To conclude this was fair to the defense, as the majority has, is preposterous. Likewise, to the extent the majority asserts that "the bulk of the deposition testimony was presented between February 22 to 24" (*supra* ¶ 85), this is rebutted by the record. The record here shows that, in addition to Dr. Stone's discovery deposition,

---

[1] Plaintiffs' counsel at oral argument before this court indicated Rabinak was paid to read the discovery depositions to the jury.

Rabinak read the discovery depositions of Drs. Conley and Citronberg to the jury on February 15, 2022. Defendants, once again, did not get to challenge that evidence until much later. Dr. Citronberg's statements, as another example, were read to the jury on February 15, 2022, but defendants were not allowed to challenge that testimony until March 10, 2022, more than three weeks later. Finally, the reason that plaintiffs did not present the other witnesses' testimony until February 22, 2022, and after, was due to COVID-19 related issues that arose with the jurors.

¶ 98        It also bears noting that the manner in which Rabinak read the discovery depositions to the jury in a cut-and-paste fashion was clearly prejudicial to the defense. For example, when Rabinak read Dr. Stone's discovery deposition to the jury, he began reading from page 5 of the discovery deposition, then jumped to page 17, then back to page 10, before skipping ahead to pages 42-43 of the deposition, and so forth. Rabinak read the other discovery depositions to the jury in the same manner. While Rabinak was only doing his job, the jury was presented with an inaccurate and misleading view of the evidence.

¶ 99        The primacy of hearing this evidence in plaintiffs' case-in-chief without hearing any sort of pushback from defense counsel is undeniably prejudicial. People tend to remember what they hear first, and in this case, preventing the jury from hearing any contradictory evidence for an extended period of time undoubtedly left the jury with a firm impression regarding the evidence in this case that could have only benefitted plaintiffs and unfairly prejudiced defendants.

¶ 100       Having said that, it is important to remember that all these witnesses were available by notice and/or subpoena to testify in person during plaintiffs' case-in-chief. The stunt of having someone else read bits and pieces of testimony in a manner that is surely of more benefit to plaintiffs' theory of the case put the defense at a huge disadvantage. While a few of the physicians testified at evidence depositions, in which the Illinois Supreme Court rules pertaining to said

depositions provided the appropriate legal strictures, the remaining physicians were subpoenaed for depositions taken for the purpose of discovery. There are profound differences between these two formats, and the majority clearly does not comprehend this most salient point. Because the physicians testified at their discovery depositions as independent contractors, the defense could not contact or in any way prepare them for this testimony under the *Petrillo* rule (see *supra* ¶ 83). This meant that those witnesses simply relied upon their independent recollection of events that took place years before they were deposed.

¶ 101    What is more, the trial court instructed the jury that it should consider the testimony, which was presented in a piecemeal and unrebutted fashion, "as if the doctor was here testifying" in court. The justice system calls for both sides to be given a fair opportunity to present their case. The trial conduct here precluded defendants from doing so. What the trial court should have done is required plaintiffs to call those witnesses live since they were not Advocate's agents at the time of their depositions, and therefore, nothing they said can be construed as admissible statements under the applicable rules. But instead, the trial court allowed plaintiffs to take advantage of an inappropriate sanctions order to plaintiffs' profound benefit and to the profound disadvantage of the defense. In doing so, the court let plaintiffs subvert the rules regarding discovery depositions in order to allow plaintiffs to simply have an "actor" read the depositions to the jury as if it was substantive evidence. The court created, in essence, a "legal fiction" to allow the admission of inadmissible testimony. While the majority has concluded that defendants have not shown the "evidentiary error caused prejudice and affected the outcome" (*supra* ¶ 85), the record shows quite the opposite.

¶ 102    Suffice it to say, defendants were not given a fair trial under the circumstances in this case; thus, the law calls for them to be given a new trial. See *Southern Illinois Airport Authority v. Smith*, 267 Ill. App. 3d 201, 209-10 (1994) (noting that jury verdicts should not be set aside and a new

trial ordered "unless there has been a miscarriage of justice, caused by the error that prejudiced and affected the substantial rights of the innocent party"). Accordingly, I would reverse the judgment and remand the case for a new trial on all issues and further rule that the treating physicians' discovery depositions cannot be used at trial.

*Browning v. Advocate Health & Hospital Corp.*, **2023 IL App (1st) 221430**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-L-6592; the Hon. John P. Kirby, Judge, presiding. |
| **Attorneys for Appellant:** | J. Timothy Eaton, Jonathan B. Amarilio, and Adam W. Decker, of Taft Stettinius & Hollister LLP, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Sharon L. Heath and Timothy W. Heath, of Heath & Heath, P.C., of Naperville, for appellees. |